**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARKUS KLOSTER, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **DEMAND FOR JURY TRIAL** |
| LILIUM N.V., KLAUS ROEWE, and JOHAN MALMQVIST, | |
| Defendants. | |

Plaintiff Markus Kloster ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Lilium N.V., ("Lilium" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Lilium; and (c) review of other publicly available information concerning Lilium.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Lilium securities between June 11, 2024 and November 3, 2024, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Lilium, together with its consolidated entities, is a start-up aviation company which is engaged in the research and development of an electric vertical takeoff and landing jet (the "Lilium Jet"). Lilium has been engaged in pre-order sales of the Lilium Jet as the Company purportedly finalizes its design, completes an ongoing certification process, and builds out manufacturing capacity.

3.      On October 24, 2024, before the market opened, Lilium disclosed that it had been unable to raise sufficient additional funds to continue the operations of the Company's principal operating wholly owned German subsidiaries. As a result, the managing directors of the subsidiaries determined that they are overindebted and are, or will, become unable to pay their existing liabilities. The Company disclosed that, subject to certain limited exceptions, the Company will lose control of the subsidiaries.

4.      On this news, Lilium's stock price fell $0.33, or 61.6%, to close at $0.21 per share on October 24, 2024, on unusually heavy trading volume. The Company's stock price continued to fall in the subsequent trading day, falling $0.06, or 28.8%, to close at $0.15 per share on October 25, 2024, on unusually heavy trading volume.

5.      Then, on November 4, 2024, before the market opened, the Company reported that, following the insolvency of the Company's subsidiaries, Lilium had not been able to raise sufficient additional funds to conduct its ongoing business consistent with past practice. The Company disclosed that "funding for the Company is not feasible." As a consequence, the Company would be "obliged to file for insolvency."

6.      On this news, Lilium's stock price fell $0.015, or 15.5%, to close at $0.083 per share on November 4, 2024, on unusually heavy trading volume. The Company's stock price continued to fall in the subsequent trading day, falling $0.031, or 36.97%, to close at $0.052 per share on November 5, 2024, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) Defendants overstated the progress of the Company's fundraising activities; (2) Defendants overstated the likelihood and/or feasibility of obtaining sufficient funding to continue operations; (3) Defendants failed to sufficiently disclose the imminent insolvency of the Company and its subsidiaries; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.      Plaintiff Markus Kloster, as set forth in the accompanying certification, incorporated by reference herein, purchased Lilium securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Lilium is incorporated under Dutch law with its principal executive offices located in Gauting, Germany. Lilium's ordinary shares traded on the NASDAQ exchange under the symbol "LILM."

15.     Defendant Klaus Roewe ("Roewe") was the Company's Chief Executive Officer ("CEO") at all relevant times.

16.     Defendant Johan Malmqvist ("Malmqvist") was the Company's Chief Financial Officer ("CFO") at all relevant times.

17.     Defendants Roewe and Malmqvist (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Lilium, together with its consolidated entities, is a start-up aviation company which is engaged in the research and development of an electric vertical takeoff and landing jet (the "Lilium Jet"). Lilium has been engaged in pre-order sales of the Lilium Jet as the Company

purportedly finalizes its design, completes an ongoing certification process, and builds out manufacturing capacity.

**Materially False and Misleading**

**Statements Issued During the Class Period**

19.     The Class Period begins on June 11, 2024. On that day, Lilium issued a shareholder letter providing a business update for the three-month period ended March 31, 2024.[1] The shareholder letter touted the Company's strong "***fundraising success,***" "***cash management,***" and "***significant progress on fundraising front.***" The shareholder letter further touted the strong funding opportunities offered by the Company's receipt of pre-delivery payments. Specifically, the shareholder letter stated, in relevant part:

**Commercial order book grows**

- Urbanlink orders 20 lilium Jets. with additional 20 options, including ***customary pre-delivery payment plan***

- eVolare announces binding sale and purchase agreements tor 4 lilium Jets

*                    *                    *

**Fundraising success**

- Successfully completed fundraise with $114 million gross proceeds

- Due diligence started tor intended loan with guarantee from the German Federal Government and the State of Bavaria

- Lilium in advanced discussions with the French government towards a government guarantee-backed loan

*                    *                    *

Our first test aircraft are advancing well. Customers like what they see - the spacious cabin, the projected range and unit economics - ***and our pipeline of orders with pre-delivery payments has grown. Discussions around further funding have***

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

*also gained traction on multiple fronts, with our successful, recent $114 million gross proceeds capital raise backed by new and existing investors, and significant advances in our funding discussions on government support from France and Germany*.

*          *          *

**On the commercial front, the Lilium Jet order pipeline continues to grow.** In May, advanced aviation operator Urbanlink purchased 20 lilium Jets for operation in South Florida. The order reflects a clear preference for the expected superior performance, range, unit economics and passenger experience offered by the Lilium Jet. Urbanlink also secured an option for 20 additional Lilium Jets. In addition, eVolare announced the signing of binding sale and purchase agreements for the acquisition of 4 Lilium Jets and agreed on terms for the reservation of up to an additional 12 Lilium Jet production slots.

In total, Lilium now has an order pipeline of over 780 lilium Jets including binding orders and Mou agreements from operators in the United States, South America, Europe, Asia, and the Middle East.

**With regard to our cash management, Lilium continues to follow a disciplined approach focused on the delivery of key Lilium Jet program milestones.** The adjusted cash spend in Q1 2024 of €94.7 million ($102 million) was driven primarily by milestone execution on the Lilium Jet development and related supplier expenses, especially in connection with the start of production of the first Lilium Jet at the end of 2023. Lilium's adjusted cash spend tor the first half of 2024 is now expected to be €185 - € 195 million ($200 - $211 million). At the end of the quarter and prior to the fundraising arranged in May, Lilium's unaudited liquidity totaled €102 million ($110 million).

At the end of May, Lilium concluded a $114 million gross proceeds capital raise backed by new and existing investors.

Also in May, the German Federal and Bavarian State governments commissioned the state-owned development bank KfW to conduct due diligence on Lilium as part of their customary investment process. **Once the diligence is completed, Lilium expects to receive guarantees from the Federal Government and the State of Bavaria as security for a loan from the German state bank. Lilium expects due diligence will take around 6 to 8 weeks and a funding amount of around €100 million.**

**In addition, Lilium confirmed that it is in advanced discussions towards a French government guarantee-backed loan, which would be non-dilutive from a financing perspective. Lilium estimates this funding will be around €200 million** with the disbursements tied to investment by Lilium to develop and expand its industrial footprint in France. Lilium plans to use the funding to build high-volume

production facilities in France, including a final assembly line, a battery pack assembly line and maintenance facilities.

Lilium continues to engage in active dialogue with sovereign entities, strategic partners, prospective customers and stakeholders for further funding initiatives.

*   *   *

***In summary, we continue to deliver our key milestones as we progress to our first manned flight, targeted to occur in late 2024 and entry into service targeted for 2026.***

*   *   *

On the commercial front the superior expected performance, unit economics and comfort provided by the lilium Jet has resulted in around ***56 firm orders, and we continue to convert MoUs into firm orders with pre-delivery payments.***

*   *   *

**Significant progress on fundraising front**

***During the past few months, Lilium made significant progress on its fundraising efforts, primarily on three fronts. First, Lilium concluded a $114 million gross proceeds capital raise, backed by both new and existing investors.***

***Second, Lilium made a significant advance in its funding discussions*** with its home state of Bavaria and the German government. Bavaria and the German government have commissioned the state bank KtW to conduct due diligence on lilium as part of the customary investment process.

***Once the diligence is completed, Lilium expects to receive guarantees from the Federal Government and the State of Bavaria as security for a loan from the German state bank.*** Lilium expects due diligence will take around 6 to 8 weeks and a funding amount of around 100 million euros which could be in the form of a convertible note.

***Finally, Lilium is in advanced discussions with the French government towards a government guarantee-backed loan, which would be non-dilutive from a financing perspective.*** Lilium estimates this funding will be around 200 million euros with the disbursements tied to investment by Lilium to develop and expand its industrial footprint in France.

Lilium plans to use the funding to build high-volume production facilities in France, including a final assembly line. a battery pack assembly line and maintenance facilities. Lilium is currently discussing potential locations for the facilities with French regional governments. Lilium's headquarters, initial production line, R&D center, and propulsion center will remain at the current location near Munich.

7

*In addition, Lilium continues to engage in active dialogue with sovereign entities, strategic partners, prospective customers and stakeholders for further funding initiatives.*

*          *          *

**Cash status and guidance**

*At the end of the quarter and prior to the latest funding, Lilium's unaudited liquidity totaled €102 million ($110 million).* Lilium cash spend in Q1 2024 was driven primarily by significant milestone execution on Lilium Jet development and related supplier expenses, especially in connection with the start of production of the first lilium Jet at the end of 2023. Lilium's adjusted cash spend in the first quarter amounted to €94.7 million ($102 million). The cash spend was also driven by phasing of supplier expenses carried over from the end of 2023. *Looking ahead, Lilium will continue to follow a prudent cash management approach supporting execution of key Lilium Jet program milestones*. Lilium's adjusted cash spend for the first half of 2024 is expected to be €185 - €195 million ($200 - $211 million).

Looking ahead to the remainder of 2024, we expect 2nd half adjusted cash spend to be slightly higher than the 1st half, driven primarily by higher spending within our supply chain, as we begin taking delivery of the various systems and components needed for assembly of our first Lilium Jet aircraft that are now on the production line.

We also increased our headcount faster than originally planned, due to successful hiring of highly qualified engineering talent earlier than anticipated.

20.      On June 11, 2024, the Company held an earnings call regarding its financial results for its fiscal first quarter ended March 31, 2024 (the "1Q24 Earnings Call"). During the 1Q24 Earnings Call, Defendant Roewe touted that the Company's "*order pipeline is growing and we've made significant funding progress*," including that the Company's pre-delivery payments were providing substantial funding, stating that "[o]n the financing front *we have already begun receiving customary collection of pre-delivery payments in connection with pre-orders*." Defendant Malmqvist further assured investors that the Company had "*made significant progress on our fundraising efforts"* and that "*customary pre-delivery payments will provide an additional support around our longer-term funding plan*." Specifically, during the 1Q24 Earnings Call, the following statements were made, in relevant part:

**<Klaus Roewe>**

*Lilium already has orders an MOU agreements from premium and airline customers.* Ladies and gentlemen, I think it is important to take note of these five differentiating factors that set Lilium apart. *And I would like to highlight the significant strides we have taken these past few months. The momentum continues.* Our first test aircraft are well advancing. *Our order pipeline is growing and we've made significant funding progress. We have our next key milestones, first piloted flight, firmly on our sights.*

\*          \*          \*

**<Johan Malmqvist>**

So now to our funding and finance highlights. During the past couple of months, we have made *significant progress on our fundraising efforts,* primarily on three fronts. First, we recently concluded a $114 million gross proceeds capital raise backed by both new and existing investors. Our largest shareholder Tencent continues to be supportive and participated in the latest round.

Second, we have made a significant advance in our funding discussions with our home state of Bavaria and the German government. They have commissioned the German State Bank, KFW, to conduct a diligence on Lilium as part of the customary investment process. *Once the diligence is completed, Lilium expects to receive state guarantees as security for a loan from the German State Bank, most likely in the form of a convertible note.* We expect the funding amount of around EUR100 million and that the diligence will take around six to eight weeks to complete.

*Finally, we advanced discussions with President Macron's administration towards a French government guarantee-backed loan, which would be non-dilutive.* We estimate the overall funding support will be around EUR200 million with disbursements over several years. We plan to use the funding to build high-volume production facilities in France, including final assembly line, battery pack assembly line, and maintenance facilities. *This planned capacity expansion is already taking into consideration in our business plan.*

\*          \*          \*

**<Johan Malmqvist>**

*Furthermore, we believe that customary pre-delivery payments will provide an additional support around our longer-term funding plan.* Lilium continues to engage in active dialogue with sovereign entities, strategic partners, prospective customers, and stakeholders for further funding initiatives.

\*          \*          \*

9

**<Klaus Roewe>**

***On the financing front we have already begun receiving customary collection of pre-delivery payments in connection with pre-orders***. We are continuing through these final processes with the German and French governments and are also in discussions in other regions and countries on funding options. ***And most important to us on the financing front is that continued long-term support of our largest shareholders and suppliers as we progress to entry into service***.

21.     On July 17, 2024, Lilium filed report of foreign issuer on Form 6-K with the SEC which touted, in part, the Company's recent capital raising activities (the "July Update"). Specifically, the July Update stated, in relevant part:

> In May and June 2024, Lilium concluded a capital raise resulting in approximately $113 million of gross proceeds after giving effect to the final allocations.
>
> *                *                *
>
> ***Lilium expects to fund its ongoing operations until type certification and entry into service with existing cash on hand, non-dilutive methods of financing such as debt instruments, government support (including, as previously announced, potentially from the German and French governments) and pre-delivery payments from customers, among other non-dilutive methods, and also dilutive methods of financing such as the issuance of additional equity securities (including pursuant to facilities such as a standby equity purchase agreement or an equity line of credit) and potentially additional investments by existing shareholders.***

22.     The July Update attached as Exhibit 99.3 a presentation of Company's "***continued progress toward first flight and entry into service***" and in particular, the Company's successful "***funding milestones***." Specifically, the presentation touted the following, in relevant part:

Continued progress toward first flight and entry into service



23.     On September 30, 2024, Lilium filed report of foreign issuer on Form 6-K with the SEC (the "2Q24 Financial Update"). The 2Q24 Financial Update attached as Exhibit 99.1 the Company's Unaudited Condensed Interim Financial Statements as of and for the six months ended June 30, 2024 ("Ex. 99.1"). The 2Q24 Financial Update attached as Exhibit 99.2 Management's Discussion & Analysis of Financial Condition and Results of Operations for the six months ended June 30, 2024 ("Ex. 99.2"). Ex. 99.1 of the 2Q24 Financial Update reported the Company's financial results, stating in relevant part:

> ***The financial statements have been prepared on a basis that assumes the Group will continue as a going concern and which contemplates the realization of assets and satisfaction of liabilities and commitments in the ordinary course of business.***

*          *          *

> As of the date of this report, existing investors have committed to provide additional funds in the aggregate amount of approximately €32 million to meet the immediate liquidity requirements of the Group and to contribute to the Minimum Funding Requirement.

*          *          *

| In € thousand | June 30, 2024 | June 30, 2023 |
|---|---|---|
| **Finance income** | **108,806** | **3,021** |
| thereof: fair value changes | 106,587 | — |
| thereof: foreign currency exchange gains on financial instruments | 290 | 1,542 |
| thereof: impairment losses net of reversal | 57 | — |
| thereof: interest income | 1,872 | 1,479 |
| | | |
| **Finance expenses** | **(8,488)** | **(258,739)** |
| thereof: fair value changes | (968) | (258,337) |
| thereof: foreign currency exchange losses on financial instruments | (6,812) | — |
| thereof: interest portion of lease payments | (297) | (292) |
| thereof: impairment losses net of reversal | — | (29) |
| thereof: other interest expenses | (411) | (81) |
| | | |
| **Financial result** | **100,318** | **(255,718)** |

24.     Ex. 99.2 of the 2Q24 Financial Update touted the Company's "***Current Sources of Liquidity and Capital Resources,***" including that the Company had "***no substantial debt***." Specifically, Ex. 99.2 stated in relevant part:

> ***As of June 30, 2024 and December 31, 2023, we had cash and cash equivalents and other financial assets of approximately €118.2 million and €203.1 million, respectively, and no substantial debt***. Our cash is mainly held at banks, on hand, or invested in short-term deposits or similar liquid assets. As of June 30, 2024 and December 31, 2023, other financial assets included our approximately €4.6 million investment in equity instrument.

25.     Ex. 99.2 of the 2Q24 Financial Update purported to warn of risks related to the Company's ability to continue as a going concern, and therein assured investors that "***approval is expected to be obtained within the next few weeks***" for certain loans from a German state development bank, and that "***management believes that the approval process will be finalized within the next few weeks and will have a positive outcome***." Ex. 99.2 further assured investors that "existing investors have committed to provide additional funds in the aggregate amount of approximately €32 million to meet [ ] immediate liquidity requirements." Specifically, Ex. 99.2 stated, in relevant part:

> **The financial statements have been prepared on a basis that assumes the Company and its consolidated subsidiaries (the "Lilium Group")** ***will*** **continue**

**as a going concern** and which contemplates the realization of assets and satisfaction of liabilities and commitments in the ordinary course of business.

\*　　　　　\*　　　　　\*

Lilium's financing plan indicates that the Lilium Group requires additional capital immediately to continue to fund its ongoing operations. Lilium is in advanced discussions regarding the provision of guarantees by the Federal Government of Germany and the Free State of Bavaria to allow for a €100 million convertible loan from a German state development bank (the "Government Convertible Loan"). The provision of such guarantees and the Government Convertible Loan are subject to an ongoing governmental approval process, which ***approval is expected to be obtained within the next few weeks. It is expected that a further three to five weeks would be required to complete and sign definitive documents and for Lilium to receive the first of two tranches of the Government Convertible Loan. Based on the progress made to date, management believes that the approval process will be finalized within the next few weeks and will have a positive outcome***. The funding of each of the two tranches of the Government Convertible Loan is expected to be subject to certain conditions precedent, including requirements that Lilium has received minimum commitments for additional funding from other investors (each, a "Minimum Funding Requirement"). Management expects that such financing will contain various operating covenants and governance rights.

As of the date of this report***, existing investors have committed to provide additional funds in the aggregate amount of approximately €32 million to meet the immediate liquidity requirements*** of the Group and to contribute to the Minimum Funding Requirement.

26.     The above statements identified in ¶¶ 19-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) Defendants overstated the progress of the Company's fundraising activities; (2) Defendants overstated the likelihood and/or feasibility of obtaining sufficient funding to continue operations; (3) Defendants failed to sufficiently disclose the imminent insolvency of the Company and its subsidiaries; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

13

## Disclosures at the End of the Class Period

27.     On October 24, 2024, before the market opened, Lilium disclosed that it had been unable to raise sufficient additional funds to continue the operations of the Company's principal operating wholly owned German subsidiaries. As a result, the managing directors of the subsidiaries determined that they are overindebted and are, or will, become unable to pay their existing liabilities. The Company disclosed that, subject to certain limited exceptions, the Company will lose control of the subsidiaries. Specifically, on that date, the Company filed a report of foreign issuer on Form 6-K with the SEC which stated, in relevant part:

> As previously reported, Lilium N.V. (the "Company" or "Lilium") has been engaged in fundraising initiatives to raise additional cash including from the German government and other sources. On October 17, 2024, Lilium received an indication that the budget committee of the parliament of the Federal Republic of Germany would not approve a €50 million guarantee of a contemplated €100 million convertible loan for Lilium from KfW. In addition, as of the date of this report, Lilium and the Free State of Bavaria have not reached an agreement in principle with respect to a guarantee of at least €50 million. ***Furthermore, despite its continuous and ongoing fundraising efforts, the Company has not been able to raise sufficient additional funds to continue the operations of Lilium GmbH and Lilium eAircraft GmbH, Lilium's principal operating wholly-owned German subsidiaries (the "Subsidiaries"). As a consequence, the managing directors of such Subsidiaries have determined that they are overindebted (Überschuldung) and are or will become unable to pay their existing liabilities due (Zahlungsunfähigkeit) within the next few days. The management of the Subsidiaries has informed the Company that they have to file for insolvency*** under German law and in doing so will apply for self-administration proceedings in Germany.
>
> ***Subject to certain limited exceptions, the Company will lose control of the Subsidiaries.*** We are in the process of analyzing the potential implications for the Company resulting from the insolvency proceedings of the Subsidiaries. This includes examining whether obligations exist under applicable insolvency law. The management of Lilium N.V. is continuously reviewing whether there are grounds for its own insolvency as well and the result of any such review may be that Lilium N.V. files for regular insolvency proceedings as well.

28.     On this news, Lilium's stock price fell $0.33, or 61.6%, to close at $0.21 per share on October 24, 2024, on unusually heavy trading volume. The Company's stock price continued

to fall in the subsequent trading day, falling $0.06, or 28.8%, to close at $0.15 per share on October 25, 2024, on unusually heavy trading volume.

29.     Then, on November 4, 2024, before the market opened, the Company reported that, following the insolvency of the Company's subsidiaries, Lilium had not been able to raise sufficient additional funds to conduct its ongoing business consistent with past practice. The Company disclosed that "funding for the Company is not feasible." As a consequence, the Company would be "obliged to file for insolvency." Specifically, on that date, the Company filed a report of foreign issuer on Form 6-K with the SEC which stated, in relevant part:

> On October 28, 2024, the Subsidiaries filed for insolvency under German law and applied for self-administration proceedings in Germany, which the court approved.
>
> Following the filing of a motion for opening of insolvency proceedings of the Subsidiaries the court has opened preliminary insolvency proceedings and has appointed a preliminary custodian to oversee the management of the Subsidiaries throughout the insolvency proceedings.
>
> *               *               *
>
> ***With respect to the Company, after continuing to investigate financing possibilities for the Company, Lilium has not been able to raise sufficient additional funds to conduct its ongoing business consistent with past practice. Financing and other strategic alternative options have been pursued without success and it has become apparent that funding for the Company is not feasible. As a consequence, the directors of Lilium have determined that a positive going concern no longer exists and the Company is therefore overindebted (Überschuldung) and is unable to pay its existing liabilities when due (Zahlungsunfähigkeit). Against this background, the board of the Company is obliged to file for insolvency*** under German law without undue delay and in doing so will apply for regular insolvency proceedings in Germany soon. Pursuant to Section 15a (1) Sentence 2 of the German Insolvency Code the application must be filed, at the latest, within three weeks in the case of a cash flow insolvency, and within six weeks of the occurrence of over-indebtedness. As a result, the board of the Company has to cease all payments and deliveries which result in a diminution of the Company's assets except for payments and deliveries that are in line with due care of the business' obligations.

30.     On this news, Lilium's stock price fell $0.015, or 15.5%, to close at $0.083 per share on November 4, 2024, on unusually heavy trading volume. The Company's stock price

continued to fall in the subsequent trading day, falling $0.031, or 36.97%, to close at $0.052 per share on November 5, 2024, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Lilium securities between June 11, 2024 and November 3, 2024, inclusive, and who were damaged thereby (the "Class").   Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Lilium's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Lilium shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Lilium or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Lilium; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Lilium's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Lilium's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Lilium's securities relying upon the integrity of the market price of the Company's securities and market information relating to Lilium, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Lilium's securities, by publicly issuing false and/or misleading statements

and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Lilium's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Lilium's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Lilium's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Lilium, their control over, and/or receipt and/or modification of Lilium's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Lilium, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Lilium's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Lilium's securities traded at artificially inflated prices during the Class Period.  On July 16, 2024, the Company's share price closed at a Class Period high of $1.02 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Lilium's securities and market information relating to Lilium, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Lilium's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about Lilium's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Lilium and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.    At all relevant times, the market for Lilium's securities was an efficient market for the following reasons, among others:

(a)    Lilium shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Lilium filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Lilium regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Lilium was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.    As a result of the foregoing, the market for Lilium's securities promptly digested current information regarding Lilium from all publicly available sources and reflected such

information in Lilium's share price. Under these circumstances, all purchasers of Lilium's securities during the Class Period suffered similar injury through their purchase of Lilium's securities at artificially inflated prices and a presumption of reliance applies.

47.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker

had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Lilium who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Lilium's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Lilium's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Lilium's financial well-being and prospects, as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Lilium's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Lilium and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Lilium's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Lilium's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Lilium's securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems

that Lilium was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Lilium securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Lilium within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements

alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Lilium and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:   November 7, 2024

/s/   *Rebecca Dawson*
**GLANCY PRONGAY & MURRAY LLP**
Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE  LAW  OFFICES  OF  FRANK  R.
CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Markus Kloster*

## SWORN CERTIFICATION OF PLAINTIFF

## LILIUM N.V. SECURITIES LITIGATION

I, Markus Kloster, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase the Lilium N.V. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Lilium N.V. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.


11/6/2024
_____
Date

_Markus Kloster_
_____
Markus Kloster

**Markus Kloster's Transactions in Lilium N.V. (LILM)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 10/24/2024 | Bought | 3,900 | $0.2115 |
| 10/24/2024 | Bought | 3,100 | $0.2115 |
| 10/24/2024 | Bought | 2,500 | $0.2115 |
| 10/24/2024 | Bought | 1,500 | $0.2115 |
| 10/24/2024 | Bought | 400 | $0.2115 |
| 10/24/2024 | Bought | 300 | $0.2115 |
| 10/24/2024 | Bought | 200 | $0.2115 |
| 10/24/2024 | Bought | 100 | $0.2115 |
| 10/24/2024 | Bought | 1,500 | $0.2115 |