**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:24-81428-Civ-SMITH/REINHART

| | |
|---|---|
| MARKUS KLOSTER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LILIUM N.V., KLAUS ROEWE, and JOHAN MALMQVIST, <br><br> Defendants. | <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF MOVANT
THE ZHANG-DONG FAMILY FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO
COMPETING MOTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 6

I.     THE ZHANG-DONG FAMILY SHOULD BE APPOINTED LEAD
      PLAINTIFF............................................................................................................... 6

      A.     The Zhang-Dong Family Has the Largest Financial Interest................................ 7

      B.     The Zhang-Dong Family Satisfies the Applicable Requirements of Rule 23 ........ 7

II.     THE COMPETING MOTIONS SHOULD BE DENIED ................................................... 9

      A.     No Eligible Competing Movant Claims a Larger Financial Interest than the
           Zhang-Dong Family.......................................................................................... 9

      B.     TLP Is Atypical, Inadequate, and Subject to Disqualifying Unique Defenses ..... 10

           1.     TLP Is Subject to Unique Defenses Related to Its Standing .................... 10

           2.     False Statements or Errors in TLP's Submissions Render It Inadequate
               Under Rule 23 ..................................................................................... 12

           3.     TLP Has Not Provided Sufficient Information to the Court to Evaluate Its
               Adequacy ............................................................................................ 14

               a.     TLP's Failure to Provide Any Meaningful Information About Itself
                   Renders It Inadequate Under Rule 23 ......................................... 14

               b.     The Court Should Grant Discovery into TLP's Opaque Operations,
                   Decision-Making Structure, and Composition ............................. 18

           4.     TLP's Net Seller Status Renders It Atypical and Inadequate ....... 19

CONCLUSION...................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B.V. Reomie Automateriaal v. IDE Inv. & Real Est., LLC*,
   No. 22-CV-00091-SWS, 2022 WL 16901968 (D. Wyo. Nov. 11, 2022) ...............................17

*Broadfoot v. Barrick Gold Corp.*,
   No. 17-cv-3507, 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017)...............................................18

*Camp v. Qualcomm Inc.*,
   No. 18-CV-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ............................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)......................................................................................................10, 11

*Gross v. AT&T Inc.*,
   No. 19-CV-2892 (VEC), 2019 WL 7759222 (S.D.N.Y. June 24, 2019).....................15, 16, 18

*Haideri v. Jumei Int'l Holding Ltd.*,
   No. 20-CV-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ................................15

*In re 21st Century Holding Co. Sec. Litig.*,
   No. 07-61057-CIV, 2007 WL 9220955 (S.D. Fla. Nov. 20, 2007) ........................................10

*In re Bally Total Fitness Sec. Litig.*,
   No. 04C3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ........................................10, 12, 20

*In re Bank of America Corp. Sec., Derivative and ERISA Litig.*,
   No. 09-MD-2058, 2011 WL 3211472 (S.D.N.Y. 2011)......................................................3, 10

*In re Boeing Co. Aircraft Sec. Litig.*,
   No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019).............................................15

*In re HEXO Corp. Sec. Litig.*,
   No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ............................15

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F.Supp.2d 993 (N.D. Cal. 1999) ...............................................................................19, 20

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .........................................................................................6, 8

*Kornfield v. Opteum Inc.*,
   No. 07-14278-CIV, 2008 WL 11408525 (S.D. Fla. Sept. 29, 2008)....................................1, 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................................10

*McFalls v. Purdue*,
   No. 3:16-cv-2116-SI, 2018 WL 785866 (D. Or. Feb. 08, 2018) .........................................4, 11

*Miller v. Dyadic Int'l, Inc.*,
   No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)......................................3, 9

*Narra v. Skyhop Techs., Inc.*,
   703 F.Supp.3d 1037 (N.D. Cal. 2023) ..............................................................................11, 12

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002)........................................................................................3, 10

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011)...................................19

*Piven v. Sykes Enterprises, Inc.*,
   137 F.Supp.2d 1295 (M.D. Fla. 2000)............................................................................ *passim*

*Prado-Steinman ex rel. Prado v. Bush*,
   22 F.3d 1266 (11th Cir. 2000) ..........................................................................................2, 8

*Rao v. Quorum Health Corp.*,
   221 F.Supp.3d 987 (M.D. Tenn. 2016)..............................................................................5, 18

*Rodriguez v. DraftKings Inc.*,
   No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) .....................4, 12, 14

*Smajlaj v. Brocade Commc'ns Sys. Inc.*,
   No. C 05-02042 CRB, 2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) ....................................17

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2015)......................................................................................................10

*Tomaszewski v. Trevena, Inc.*,
   383 F.Supp.3d 409 (E.D. Pa. 2019) ..................................................................................13

*Tran v. ERBA Diagnostics, Inc.*,
   No. 15-CV-24440, 2016 WL 7438833 (S.D. Fla. Apr. 8, 2016) ..........................................6, 8

*Vincelli v. National Home Health Care Corp.*,
   112 F.Supp.2d 3109 (M.D. Fla. 2000)...............................................................................1, 7

*Weisz v. Calpine Corp.*,
   No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ...........................6, 19, 20

**<u>Statutes</u>**

15 U.S.C. § 78u-4 ...................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

Lead Plaintiff Movant, the Zhang-Dong Family,[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel (Dkt. No. 40); and in opposition to the competing motions of: (i) Richard Tristan Garcia ("Garcia") (Dkt. No. 35); (ii) Wim Taeymans ("Taeymans") (Dkt. No. 37); (iii) TLP One LLC ("TLP") (Dkt. No. 38); and (iv) Worthmore Global Management LLC ("WGM") (Dkt. No. 39).[2]

## PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Lilium securities.  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant or group of movants with the greatest financial interest in the outcome of the Action; ***and*** that satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is the Zhang-Dong Family, which incurred a loss of approximately $88,454 in connection with its Class Period transactions in Lilium securities.  *See* Dkt. No. 40-3. Although the PSLRA does not define "financial interest," courts in the Eleventh Circuit, including in this District, recognize that the amount of monetary loss is the most significant factor to be considered.  *See Kornfield v. Opteum Inc.*, No. 07-14278-CIV, 2008 WL 11408525, at *4 (S.D. Fla. Sept. 29, 2008) (equating financial interest with monetary loss); *Vincelli v.*

---

[1]All capitalized terms herein are defined in the Zhang-Dong Family's motion and moving brief, unless otherwise indicated.  *See* Dkt. No. 40.

[2]Initially, one other putative Class member, Manuel de Bragança Fangueiro ("Fangueiro"), filed a similar competing motion.  *See* Dkt. No. 36.  Fangueiro subsequently withdrew his motion. *See* Dkt. No. 41.

1

*National Home Health Care Corp.*, 112 F.Supp.2d 3109, 1317 (M.D. Fla. 2000) (same).  The table below sets forth the respective claimed losses of the competing movants:

| Movant | Loss |
|---|---|
| Zhang-Dong Family | $88,454 |
| WGM | $78,473 |
| Garcia | $18,205 |
| Taeymans | $3,761 |
| ~~TLP~~ | ~~$257,272~~ |

As the above table reflects, the Zhang-Dong Family has set forth the largest loss among the eligible competing movants.  Although one competing movant, TLP, claims a larger loss than the Zhang-Dong Family, TLP is ineligible for appointment as lead plaintiff because it is atypical and inadequate within the meaning of Rule 23, as well as subject to disqualifying unique defenses, as discussed in detail below.  Accordingly, the Zhang-Dong Family possesses the largest financial interest in the outcome of this litigation of any eligible competing movant.

In addition to its considerable financial interest, the Zhang-Dong Family also strongly satisfies Rule 23's typicality and adequacy requirements.  The Zhang-Dong Family's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See Prado-Steinman ex rel. Prado v. Bush*, 22 F.3d 1266, 1279 (11th Cir. 2000); *Piven v. Sykes Enterprises, Inc.*, 137 F.Supp.2d 1295, 1306 (M.D. Fla. 2000).  Additionally, the Zhang-Dong Family's significant loss gives it a sufficient stake in the outcome of this Action to ensure vigorous advocacy on behalf of the Class, it is aware of no conflict between its interests and those of the Class, and it has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel and Liaison Counsel for the Class, as reflected in Pomerantz and Miller Shah's

2

respective resumes (*see* Dkt. Nos. 40-7, 40-8).  *See Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at \*6 (S.D. Fla. Apr. 18, 2008).  Further demonstrating its adequacy, the Zhang-Dong Family has submitted a detailed Joint Declaration providing the Court with biographical information about its members, a married couple, and attesting to, *inter alia*, their understanding of the significance of their motion, their understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and their readiness to shoulder these responsibilities on behalf of the Class.  *See* Dkt. No. 40-6 ¶¶ 1-7, 9-13.

In stark contrast, TLP, the only competing movant claiming a larger loss than the Zhang-Dong Family, is atypical and inadequate under Rule 23, as well as subject to disqualifying unique defenses, and thus ineligible for appointment as Lead Plaintiff in this Action irrespective of its claimed loss.

*First*, TLP is subject to disqualifying unique defenses regarding its standing to pursue fraud claims on behalf of the Class.  *See Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (disqualifying lead plaintiff movant under the PSLRA that "may be subject to unique defenses that might imperil certification of a class").  Here, TLP has proffered no evidence that it is the beneficial owner of the securities at issue in this litigation, nor that it transacted in Lilium securities.  *See In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at \*12-14 (S.D.N.Y. 2011) (noting Article III standing in securities fraud actions requires beneficial ownership in the securities at issue and a purchase or sale of those securities during the relevant period).  Rather, the Certification signed by Jamie Lissette ("Lissette") on behalf of TLP (the "Lissette Certification") (Dkt. No. 38-4), sworn to "under penalty of perjury" (*id.* at 2), indicates that Lissette, not TLP, is the actual owner of the Lilium shares at issue in this Action and states that he, not TLP, is the investor who

actually transacted in the relevant securities.  *See id.* at 1 ¶ 5 ("I, the undersigned Jamie Lissette, on behalf of TLP . . . certify that . . . [a]ttached hereto as Schedule A is a complete listing of all *my* Lilium . . . transactions during the Class Period." (Emphasis added.)); *see also id.* at 3 (listing "Class Period Transactions of *Jamie Lissette* in Lilium . . . securities" (emphasis added)). Accordingly, TLP has failed to establish its Article III standing to pursue the fraud claims in this Action.  *See McFalls v. Purdue*, No. 3:16-cv-2116-SI, 2018 WL 785866, at *8 (D. Or. Feb. 08, 2018) ("Article III standing is evaluated by considering the facts as they existed at the time of the commencement of the action.").

       *Second*, certain of TLP's submissions are either false or else contain glaring errors. Courts routinely deny lead plaintiff motions under such circumstances because they raise questions regarding the movant's fitness to supervise complex securities class actions.  *See Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *6, *9 (S.D.N.Y. Nov. 12, 2021) (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative").  Here, in its moving brief, TLP asserts that the Lissette Certification "identif[ies] *its* transaction in Lilium" and that "through its Managing *Member*, [it] has . . . execut[ed] a certification detailing *its* Class Period transactions and expressing willingness to serve as Class representative[.]"  Dkt. No. 38-1 at 1 n.1, 8 (emphases added).  Not so.  Rather, the Lissette Certification identifies "Class Period Transactions *of Jamie Lissette* in Lilium . . . securities"  (Dkt. No. 38-4 at 3 (emphasis added)); refers to Lissette as "the Managing *Partner* of TLP" (*id.* at 1 ¶ 1 (emphasis added)); and only expresses Lissette's own interest and willingness to serve as a Class representative (*see id.* ¶¶ 2, 4).  Accordingly, either TLP made false statements in its moving brief, or the Lissette Certification makes false statements under penalty

4

of perjury. Neither scenario bodes well for TLP's fitness to serve as a fiduciary on behalf of a Class of potentially hundreds or thousands of injured investors.

*Third*, TLP has failed to provide any meaningful information about itself for the Court to evaluate its adequacy, which is an independent reason to deny its motion. *See Piven*, 137 F.Supp.2d at 1305 (disqualifying movant where it "has not proffered any information regarding its identity, resources, and experience"). All that TLP has offered to the Court is that it is "a Wyoming LLC serving as a private investment vehicle" for someone or something (Dkt. No. 38-1 at 8), and that Lissette is presumably either its "Managing Member" (*id.*) or "Managing Partner" (Dkt. No. 38-4 at 1 ¶ 1). TLP has conspicuously made no proffer whatsoever regarding, *inter alia*, its investment or business strategies, decision-making structure, or composition; who or what individual or entity TLP is an investment vehicle for; or whether Lissette, TLP's purported representative in this Action, is authorized alone or with others to bind TLP and enter into litigation on its behalf. Moreover, not being required to make public disclosures regarding, *inter alia*, its members or managers, LLCs organized under the laws of Wyoming are notoriously opaque, making it difficult, if not impossible, to answer these questions by reviewing public resources. *See Anonymous Wyoming LLC and Privacy*, Offshore Affairs, https://www.offshoreaffairs.com/wyoming-llc/wyoming-llc-privacy (last visited Jan. 21, 2025) ("Wyoming LLCs have been long regarded as private or anonymous offshore companies."). Accordingly, the Zhang-Dong Family respectfully submits that, at a minimum, the Court should order fulsome discovery into TLP to assess its adequacy and capability to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *see also Rao v. Quorum Health Corp.*, 221 F.Supp.3d 987, 990 (M.D. Tenn. 2016) (granting discovery to determine a lead plaintiff movant's adequacy).

*Fourth*, assuming *arguendo* that the transactions listed in the Lissette Certification *are*, in fact, attributable to TLP, they show that TLP is a net seller—that is, TLP sold more shares of Lilium stock than it purchased—during the Class Period.  Courts routinely disqualify net sellers from consideration as lead plaintiffs under PSLRA, finding them atypical and inadequate, because, having sold more shares at artificially inflated prices than they purchased, net sellers may have actually profited from Defendants' alleged fraud.  *See, e.g.*, *Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) (disqualifying movant that "sold almost twice th[e] amount [of shares it purchased] . . . during the Class Period"). Here, the Lissette Certification lists total purchases of 794,200 Lilium shares and total sales of *1,792,610* Lilium shares during the Class Period.  *See* Dkt. No. 38-4 at 3.   Accordingly, if appointed Lead Plaintiff, there is a non-speculative risk that TLP will ultimately be found to have profited from Defendants' alleged fraud.  Such a finding would of course make an investor atypical and inadequate under Rule 23 with respect to a class of investors who were damaged by the Defendants' alleged fraud.

For the reasons set forth herein, the Zhang-Dong Family respectfully submits that the Court should grant its motion in its entirety and deny the competing motions.

## ARGUMENT

## I.    THE ZHANG-DONG FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA provides a rebuttable presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *See Tran v. ERBA Diagnostics, Inc.*, No. 15-CV-24440, 2016 WL 7438833, at *1 (S.D. Fla. Apr. 8, 2016); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94

6

(S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted upon proof that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is the Zhang-Dong Family.

### A.      The Zhang-Dong Family Has the Largest Financial Interest

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  *Id.* § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Eleventh Circuit, including in this District specifically, recognize that the amount of monetary loss is the most significant factor to be considered.  *See, e.g.*, *Kornfield*, 2008 WL 11408525, at *4 (equating financial interest with monetary loss); *Vincelli*, 112 F.Supp.2d at 1317 (same).

Under the foregoing analysis, no competing movant eligible for appointment as Lead Plaintiff has a larger financial interest than the Zhang-Dong Family in this Action.  As the chart at p. 2 reflects, the Zhang-Dong Family's $88,454 loss is significantly larger than that claimed by any other eligible competing movant.  Thus, the Zhang-Dong Family clearly possesses the largest financial interest in this litigation within the meaning of the PSLRA of any eligible movant seeking appointment as Lead Plaintiff.  Although one competing movant, TLP, has alleged a larger loss than the Zhang-Dong Family, TLP is atypical and inadequate within the meaning of Rule 23, as well as subject to disqualifying unique defenses, and thus disqualified from consideration for appointment as Lead Plaintiff, as discussed in detail *infra* in Section II.B.

### B.      The Zhang-Dong Family Satisfies the Applicable Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of this litigation of any eligible movant, and thus being the statutorily presumed "most adequate plaintiff" (15

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)), the Zhang-Dong Family has plainly made the requisite *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23. *See Tran*, 2016 WL 7438833, at *1 (appointing investor that "has the largest financial interest in this action, and has made a *prima facie* showing that [it] satisfies the typicality and adequacy requirements of [Rule 23]" as lead plaintiff); *Kaplan*, 240 F.R.D. at 94 ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").

*First*, the Zhang-Dong Family's claims in this litigation satisfy the typicality requirement of Rule 23(a)(3) because its claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Prado*, 22 F.3d at 1279; *Piven*, 137 F.Supp.2d at 1306. The Zhang-Dong Family alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Lilium, or by omitting to state material facts necessary to make the statements they did make not misleading. Moreover, the Zhang-Dong Family, like other Class members, purchased Lilium securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Lilium's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23. *See Prado*, 22 F.3d at 1279; *Piven*, 137 F.Supp.2d at 1306.

*Second*, the Zhang-Dong Family satisfies the adequacy requirement of Rule 23(a)(4) because its significant loss gives it a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class; it is aware of no conflict between its interests and those of the Class; and, in Pomerantz and Miller Shah, it has selected and retained counsel that

8

are highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel and Liaison Counsel for the Class. *See Miller*, 2008 WL 2465286, at *6. The Zhang-Dong Family has further demonstrated its adequacy by submitting with its motion papers a Joint Declaration that provides detailed information about its members, a married couple, including their city and country of residence, age, investment experience, and professional and educational background, and that attests to, *inter alia*, their understanding of the significance of their motion and the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, as well as their readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 40-6 ¶¶ 1-7, 9-13.

* * * *

Because the Zhang-Dong Family has the largest financial interest in the relief sought by the Class of any eligible movant seeking appointment as Lead Plaintiff and otherwise satisfies the applicable requirements of Rule 23, it is the presumptive "most adequate" plaintiff of the Class within the meaning of the PSLRA. To overcome the strong presumption entitling the Zhang-Dong Family to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the Zhang-Dong Family is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## II.     THE COMPETING MOTIONS SHOULD BE DENIED

### A.     No Eligible Competing Movant Claims a Larger Financial Interest than the Zhang-Dong Family

As discussed further in Section I.A., *supra*, no competing movant eligible for appointment as Lead Plaintiff claims a larger financial interest in this Action than the Zhang-Dong Family. This fact alone mandates denial of the competing motions by Garcia (Dkt. No. 35), Taeymans (Dkt. No. 37), and WGM (Dkt. No. 39).

9

**B.    TLP Is Atypical, Inadequate, and Subject to Disqualifying Unique Defenses**

**1.    TLP Is Subject to Unique Defenses Related to Its Standing**

TLP is subject to disqualifying unique defenses because it has failed to establish its standing to pursue the fraud claims against the Defendants in this Action.  The PSLRA precludes the appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005); *see also Newman*, 209 F.R.D. at 504 (disqualifying lead plaintiff movant under the PSLRA that "*may* be subject to unique defenses that *might* imperil certification of a class in this case" (emphases added)); *In re 21st Century Holding Co. Sec. Litig.*, No. 07-61057-CIV, 2007 WL 9220955, at *4 (S.D. Fla. Nov. 20, 2007) (disqualifying movant where "it is possible to arrive at a determination that" movant "would be subject to a unique defense").

"[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)).  "[T]he injury must affect the plaintiff in a personal and individual way."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).  In a securities fraud action under Section 10(b) of the Exchange Act, like this Action, the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue and engaged in a purchase or sale during the relevant period during which misconduct allegedly occurred (*i.e.*, during the Class Period).  *See Bank of America*, 2011 WL 3211472, at *12-14.  In addition, standing is assessed "at the outset of the litigation."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

10

528 U.S. 167, 180 (2000); *see also McFalls*, 2018 WL 785866, at *8 ("[S]tanding is evaluated by considering the facts as they existed at the time of the commencement of the action.").

Here, TLP has not established that it is the beneficial owner of the securities at issue—that is, the party that was actually harmed by Defendants' alleged fraud—nor that it engaged in a purchase or sale of Lilium securities during the Class Period. Rather, in the Lissette Certification, Lissette swears "under penalty of perjury" (Dkt. No. 38-4 at 2) that he, not TLP, purchased the Lilium securities at issue in this litigation during the Class Period. *See id.* at 1-3. Lissette swears that "[a]ttached hereto as Schedule A is a complete listing of all *my* Lilium . . . transactions during the Class Period." *Id.* at 1 ¶ 5 (emphasis added). The Schedule A appended to the Lissette Certification likewise unequivocally states that it lists "Class Period Transactions of *Jamie Lissette* in Lilium . . . securities." *Id.* at 3 (emphasis added). Moreover, the losses reflected in TLP's loss chart exhibit are calculated based on the transactions listed in the Lissette Certification's Schedule A, meaning those losses are attributable to *Lissette*—not to TLP. *See* Dkt. No. 38-5. TLP has not submitted an assignment of claims that would allow it to pursue Lissette's fraud claims arising from *his* Class Period transactions in Lilium securities during the Class Period. Absent any such assignment, TLP has not established any basis to pursue securities fraud claims in connection with investment losses that Lissette—not TLP—incurred.

TLP's failure at the outset of this litigation to submit documentation or evidence sufficient to establish its standing is fatal to its motion for appointment as lead plaintiff. *See Friends of the Earth*, 528 U.S. at 180 (noting standing is assessed "at the outset of the litigation"); *McFalls*, 2018 WL 785866, at *8 ("[S]tanding is evaluated by considering the facts as they existed at the time of the commencement of the action."); *Narra v. Skyhop Techs., Inc.*, 703 F.Supp.3d 1037, 1039 n.1 (N.D. Cal. 2023) ("Standing . . . is measured from the time when a

11

cause of action is filed, not from the time when a party corrects any defects in its initial pleading of that cause."). Nor may TLP "correct[] any defects" with its purported Article III standing by filing amended or subsequent submissions. *Narra*, 703 F.Supp.3d at 1039 n.1. TLP's failure to establish its standing is troubling because Defendants are virtually guaranteed to demand proof of TLP's standing if this lawsuit survives a motion to dismiss and proceeds to discovery. At the very least, Defendants will vigorously litigate the question of TLP's standing, thereby distracting TLP from the prosecution of the Class's fraud claims. At worst, if TLP is subsequently found *not* to have standing to pursue the fraud claims in this lawsuit, then the Class's claims risk dismissal for esoteric reasons unique to TLP and irrelevant to other Class members. TLP's appointment as Lead Plaintiff will therefore subject the Class to the litigation of standing-related issues that are unique to itself and irrelevant to most Class members. There is simply no reason to subject the Class's claims to such a foreseeable risk. *Bally*, 2005 WL 627960, at \*6 ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed.").

### 2. False Statements or Errors in TLP's Submissions Render It Inadequate Under Rule 23

TLP is inadequate under Rule 23 because its submissions in support of its motion are facially false and defective. Courts routinely disqualify movants from consideration for appointment as lead plaintiff because of such issues. *See, e.g.*, *Rodriguez*, 2021 WL 5282006, at \*6, \*9 (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *Camp v. Qualcomm Inc.*, No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at \*3-4 (S.D.

12

Cal. Jan. 22, 2019) (finding errors in submissions prohibit movant from satisfying Rule 23); *Tomaszewski v. Trevena, Inc.*, 383 F.Supp.3d 409, 414 (E.D. Pa. 2019) (disqualifying movant where errors in sworn certification showed a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class").

Here, TLP's moving brief contains numerous representations that are inconsistent with the sworn statements in the Lissette Certification. For example, TLP's moving brief states that TLP has submitted a "certification identifying ***its*** transaction in Lilium, as required by the PSLRA" and that "[w]ithin the Class Period, [***it***] purchased Lilium securities[.]" Dkt. No. 38-1 at 1 n.1, 6 (emphases added). However, the Lissette Certification states, in relevant part: "I . . . Jamie Lissette, on behalf of TLP . . . certify that . . . [a]ttached hereto as Schedule A is a complete listing of all ***my*** Lilium . . . transactions during the Class Period." Dkt. No. 38-4 at 1 ¶ 5 (emphasis added). Likewise, the Schedule A appended to the Lissette Certification states that it lists "Class Period Transactions of ***Jamie Lissette*** in Lilium . . . securities." *Id.* at 3 (emphasis added). Moreover, TLP's moving brief states that "through its Managing ***Member***, [it] has . . . execut[ed] a certification detailing ***its*** Class Period transactions and expressing willingness to serve as Class representative[.]" Dkt. No. 38-1 at 8 (emphases added). However, the Lissette Certification states that Lissette is "the Managing ***Partner*** of TLP" (Dkt. No. 38-4 at 1 ¶ 1 (emphasis added)), not its Managing ***Member***, and only attests to Lissette's own interest and willingness to serve as a Class representative. *See id.* ¶¶ 2, 4  ("I have reviewed the complaint in this action and have authorized the filing of a Lead Plaintiff motion on ***my*** behalf . . . . ***I*** want to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial." (Emphases added.)).

13

Accordingly, one of two scenarios must be true: (i) TLP's moving brief is accurate and TLP submitted a false certification under penalty of perjury; or (ii) the Lissette Certification is accurate, and TLP's moving brief contains false statements as to TLP's own purported transactions in Lilium securities during the Class Period, TLP's own interest and willingness to serve as a Class representative, and Lissette's status as TLP's Managing Member.  Neither scenario bodes well for TLP's adequacy to serve as a fiduciary on behalf of a Class of potentially hundreds or thousands of injured investors.  These false statements in TLP's "submissions [are] undoubtedly relevant and concerning, and play[] an important role in the Court's assessment of [its] adequacy as a putative class representative" because, "[h]ad [TLP] been serious about [its] responsibilities as a budding class representative, [it] should not have had to have been alerted to these basic errors in the first place." *Rodriguez*, 2021 WL 5282006, at *6, *9.

The Zhang-Dong Family respectfully urges the Court not to dismiss the foregoing issues as minor or clerical errors.  This litigation is a complex securities class action, and the Court-appointed Lead Plaintiff will be required to diligently review all significant filings and supervise the efforts of counsel.  TLP's failure to identify obvious errors or falsities in its motion papers should not give the Court confidence that it is prepared to serve as the Class's fiduciary.

### 3.    TLP Has Not Provided Sufficient Information to the Court to Evaluate Its Adequacy

#### a.    TLP's Failure to Provide Any Meaningful Information About Itself Renders It Inadequate Under Rule 23

TLP has failed to provide any meaningful information about itself for the Court to evaluate its adequacy to oversee the fraud claims in this Action.  While the standard for evaluating adequacy at the lead plaintiff appointment stage is *prima facie*, courts have nevertheless denied motions by movants that have provided no meaningful information about themselves.  *See, e.g.*, *Piven*, 137 F.Supp.2d at 1305 (finding movant inadequate to serve as lead

14

plaintiff where it "has not proffered any information regarding its identity, resources, and experience"); *In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020) ("[A]mple case law supports what one would have thought is an uncontroversial point–namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication."); *Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019) (disqualifying movant that "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation"); *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-CV-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (disqualifying movants who "provided *no* information about themselves[,]" finding subsequent proffer in additional filings was "conclusory and problematic" and reflected a "lack of involvement" in the litigation (emphasis in original)); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (denying motion where "[t]he complete dearth of information accompanying the [movants'] lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation").

　　*AT&T* is particularly instructive. There, in considering competing motions for appointment as lead plaintiff under the PSLRA, the court denied a motion by a private limited investment company that asserted in its briefing that it satisfied the Rule 23 adequacy standard, yet provided no meaningful information about itself:

> Pro-Alpha has not provided sufficient information for the Court to determine that it will fairly and adequately protect the interests of the class . . . . [I]t is an undisputed fact that Pro-Alpha has failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation . . . . The Court declines to appoint as lead-plaintiff an entity that lacks basic transparency even at this juncture.

*AT&T*, 2019 WL 7759222, at *2 (internal quotations and citations omitted).

15

Here, as in *AT&T*, and in stark contrast to the detailed proffer set forth in the Joint Declaration that the Zhang-Dong Family submitted with its motion (*see* Dkt. No. 40-6), TLP has conspicuously provided *no* meaningful information about itself from which the Court can gauge its adequacy to oversee this Action on behalf of a Class of potentially hundreds or thousands of injured investors.  All that TLP has offered to the Court about itself is that it is "a Wyoming LLC serving as a private investment vehicle" for someone or something (Dkt. No. 38-1 at 8), and that Lissette is presumably either its "Managing Member" (*id.*) or "Managing Partner" (Dkt. No. 38-4 at 1 ¶ 1), depending on which, if any, of TLP's conflicting submissions is accurate.  Although TLP has provided background information concerning Lissette in the Lissette Certification (*see id.*), Lisette is *not* the movant in this Action; TLP is.  TLP has made no proffer regarding, *inter alia*, its investment or business strategies, decision-making structure, or composition, nor clarified who or what individual or entity TLP is a private investment vehicle for.  Accordingly, TLP has left the Court to guess at various important questions related to its fitness and ability to pursue fraud claims on behalf of the Class.  Is Lissette, who signed the only certification on behalf of TLP, authorized to enter into litigation on TLP's behalf and bind TLP in connection with this litigation?  How many LLC members does TLP have?  Are there any other Managing Members (or Managing Partners) authorized to make decisions on behalf of TLP?  If there are others, do they need to make decisions on TLP's behalf by consensus?  Is anyone, including Lissette, authorized to make unilateral decisions on behalf of TLP?  Who is the ultimate beneficiary of TLP's trading profits, and where are those profits held?  Are they offshore?  What is the origin of TLP's capital with which it purportedly invested in Lilium securities?  What is TLP's financial wherewithal?  How long has TLP itself been investing in the securities markets?  With these and other questions left unanswered, TLP remains an opaque company that has failed

16

to establish its adequacy to oversee this Action.  *See Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB, 2006 WL 7348107, at *11-12 (N.D. Cal. Jan. 12, 2006) (disqualifying movant where questions existed as to its "authority, transparency, and structure").

Efforts to shed light on TLP's opaque business, operations, and decision-making structure are further frustrated by its status as a Wyoming LLC.  Wyoming LLCs are notorious for the anonymity and privacy afforded to their members and managers, who are not required under Wyoming law to identify themselves.  *See B.V. Reomie Automateriaal v. IDE Inv. & Real Est., LLC*, No. 22-CV-00091-SWS, 2022 WL 16901968, at *2 (D. Wyo. Nov. 11, 2022) ("[E]nabling anonymity of Wyoming LLCs' members creates an absolute nightmare for Federal Courts . . . . The Court notes this case is not the first nor an anomaly—it is one of several where a Wyoming LLC has been sued with unnamed and unidentifiable members[.]"); *Anonymous Wyoming LLC and Privacy*, Offshore Affairs, https://www.offshoreaffairs.com/wyoming-llc/wyoming-llc-privacy (last visited Jan. 21, 2025) ("Wyoming LLCs have been long regarded as private or anonymous offshore companies . . . . Wyoming LLCs do not show on public records who the manager or the members are, as that information is not even reported to the Wyoming Secretary of State when the company is formed nor requested in the annual report."); Leo Wolfson, *Are Wyoming's Secretive LLC Laws Making State A "Haven For Scammers?"*, Cowboy State Daily (July 30, 2024), https://cowboystatedaily.com/2024/07/30/are-wyomings-secretive-llc-laws-making-state-a-haven-for-scammers/ ("Concerned Wyoming's secretive LLC laws are making the state a 'haven for scammers,' legislators are looking to close loopholes.").

The necessarily public nature of serving as a Lead Plaintiff under the PSLRA and acting as a fiduciary and leader on behalf of a Class, not to mention the public nature of court proceedings in general, counsels against the appointment of an opaque Wyoming LLC that has,

17

with its very first submission to the Court, barely identified itself or its qualifications. *See Piven*, 137 F.Supp.2d at 1305 (disqualifying movant that "has not proffered any information regarding its identity, resources, and experience"); *AT&T*, 2019 WL 7759222, at \*2 (disqualifying private limited investment company that "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation").

### b. The Court Should Grant Discovery into TLP's Opaque Operations, Decision-Making Structure, and Composition

The Zhang-Dong Family respectfully requests that the Court grant discovery into facts surrounding, *inter alia*, TLP's opaque operations, decision-making structure, and composition. The PSLRA permits this Court to order "discovery relating to whether [a movant] is the most adequate plaintiff" if another lead plaintiff movant has demonstrated "a reasonable basis for a finding that [a movant is] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv); *see also Broadfoot v. Barrick Gold Corp.*, No. 17-cv-3507, 2017 WL 3738444, at \*1 (S.D.N.Y. Aug. 9, 2017) (granting limited discovery where "there exists a potential that [a movant] is in a unique position that would defeat typicality and adequacy"); *Rao*, 221 F.Supp.3d at 990 (granting limited discovery to determine if movant "will adequately represent the class and whether it is subject to any unique defenses").

Here, for the reasons discussed at length herein, the Zhang-Dong Family respectfully submits that TLP is atypical, inadequate, and/or subject to various disqualifying unique defenses for a litany of reasons. To the extent that the Court believes additional information would assist its "most adequate plaintiff" analysis pursuant to the PSLRA, then the foregoing issues at a minimum demonstrate "a reasonable basis for a finding that [TLP] is incapable of adequately representing the class" such that discovery is warranted. 15 U.S.C. § 78u-4(a)(3)(B)(iv). The Zhang-Dong Family thus respectfully requests that the Court grant it the ability to serve

18

discovery into, *inter alia*, TLP's investment and business strategies, decision-making and reporting structure, composition, members and managers, and who or what it serves as a private investment vehicle for.  Should the Court grant the Zhang-Dong Family's request for discovery, the Zhang-Dong Family further requests that the Court permit additional briefing to allow the movants to address any new information revealed in the course of discovery.

### 4.      TLP's Net Seller Status Renders It Atypical and Inadequate

Assuming *arguendo* that the transactions listed in the Lissette Certification *are*, in fact, attributable to TLP, TLP is further atypical and inadequate under Rule 23 because it is a net seller of Lilium stock—that is, it sold more shares of Lilium stock than it purchased—during the Class Period.  *See* Dkt. No. 38-4 at 3.  Courts routinely disqualify net sellers from consideration as lead plaintiffs in PSLRA actions like this Action, finding them atypical and inadequate under Rule 23 because, by virtue of having ***sold*** more shares of stock at artificially inflated prices than they ***purchased***, such investors may ultimately be found to have profited from Defendants' alleged fraud.  *See, e.g.*, *Weisz*, 2002 WL 32818827, at *7 (disqualifying movant that "sold almost twice th[e] amount [of shares it purchased] . . . during the Class Period" because it "may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price"); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011) ("When [movant] sold [stock] during the Class Period . . . he sold it at fraudulently inflated prices. As a result . . . [movant] actually benefitted from the fraud."); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993, 996-97 (N.D. Cal. 1999) ("A net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares,[] and has been left 'holding the bag' when the fraudulent inflation is revealed. By contrast a net seller has arguably *profited* more from the fraud than it has been injured, possibly reducing its incentive to litigate."  (Emphasis in original.)).

19

Here, the Schedule A appended to the Lissette Certification shows that TLP (if those transactions are indeed attributable to it) *sold more than twice as many Lilium shares during the Class Period than it purchased*, indisputably rendering it a net seller of Lilium stock.  *See* Dkt. No. 38-4 at 3.  Specifically, the Schedule A appended to the Lissette Certification lists total purchases of 794,200 Lilium shares and total sales of *1,792,610* Lilium shares during the Class Period.  *Id.*  In other words, TLP *sold nearly a million more Lilium shares during the Class Period than it purchased* at prices alleged to have been artificially inflated by Defendants' alleged fraud.  *Id.*  Accordingly, if appointed Lead Plaintiff, there is a non-speculative risk that TLP will be found at a later stage in this litigation to have ultimately profited from Defendants' alleged fraud, as opposed to having been harmed by it like other Class members, rendering it an atypical and inadequate Class representative under Rule 23.  *See Weisz*, 2002 WL 32818827, at *7 (disqualifying movant that "sold almost twice th[e] amount [it purchased] . . . during the Class Period" because it "may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price"); *McKesson*, 97 F. Supp. 2d at 996-97 ("[A] net seller has arguably *profited* more from the fraud than it has been injured, possibly reducing its incentive to litigate." (Emphasis in original.)).  There is simply no reason to saddle the Class with a representative subject to such debilitating issues.  *See Bally*, 2005 WL 627960, at *6 ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed.").

## CONCLUSION

For the foregoing reasons, the Zhang-Dong Family respectfully requests that the Court issue an Order: (1) appointing the Zhang-Dong Family as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class.

Dated:  January 21, 2025                                    Respectfully submitted,

20

**MILLER SHAH LLP**

By: */s/ Jayne A. Goldstein*
Jayne A. Goldstein
Nathan C. Zipperian
2103 N. Commerce Parkway
Ft. Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
jagoldstein@millershah.com
nczipperian@millershah.com

*Counsel for the Zhang-Dong Family and Proposed*
*Liaison Counsel for the Class*

**POMERANTZ LLP**
James M. LoPiano
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jlopiano@pomlaw.com

*Counsel for the Zhang-Dong Family and Proposed*
*Lead Counsel for the Class*

**HAO & HAN LAW FIRM**
Junbo Hao
12B05, Tower A
Ocean Express Building
Chaoyang District, Beijing
People's Republic of China
Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for the Zhang-Dong Family*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2025, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

*/s/ Jayne A. Goldstein*
Jayne A. Goldstein

22