UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-81428-CIV-SMITH

MARKUS KLOSTER, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

  v.

LILIUM N.V., KLAUS ROEWE, and JOHAN
MALMQVIST,

        Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

| **SHRAIBERG PAGE P.A.** | **FRESHFIELDS US LLP** |
|---|---|
| Roger Franks (admitted *pro hac vice*) | Doru Gavril (admitted *pro hac vice*) |
| Bradley S. Shraiberg | Boris Feldman (admitted *pro hac vice*) |
| Florida Bar No. 121622 | Carl P. Hudson (admitted *pro hac vice*) |
| Patrick Dorsey | 855 Main Street |
| Florida Bar No. 0085841 | Redwood City, CA |
| 2385 NW Executive Center Dr Ste 300 | Telephone: (650) 618-9250 |
| Boca Raton, FL 33431-8530 | Email: doru.gavril@freshfields.com |
| Telephone: (561) 443-0800 |       boris.feldman@freshfields.com |
| Email: bss@slp.law |       carl.hudson@freshfields.com |
|       pdorsey@slp.law | |
| | Adam Rosenfeld (admitted *pro hac vice*) |
| | 3 World Trade Center |
| | 175 Greenwich Street, 51st Floor |
| | New York, NY 10007 |
| | Telephone: (212) 277-4000 |
| | Email: adam.rosenfeld@freshfields.com |

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

    I. PLAINTIFF FAILS TO PLEAD SECURITIES FRAUD UNDER SECTION 10(b) ............ 1

        A. The Opposition Illustrates that the Complaint Suffers from Puzzle-Pleading ................ 1

        B. Plaintiff Fails to Allege a Strong Inference of Scienter .................................................... 2

            1. The Opposition Cannot Defend the Dispositive Flaws of the CWs ........................... 2

            2. The Opposition Fails to Support the Claim that Management Was "Directly Involved" in the Imaginary Fraudulent Scheme ........................................................ 3

            3. The Opposition Repeats an Insufficient Core Operations Theory .............................. 3

            4. The Opposition's "Repetition" and "Active Communication" Theories Are Contrary to the Law and Were Not Alleged .................................................................. 4

            5. The Opposition's "Temporal Proximity" Argument Ignores the Cause of the Bankruptcy, and Baldly Misstates Lilium's Disclosures .............................................. 4

            6. The Opposition's Rebranded Motive and Opportunity Allegations Fail .................... 5

        C. Plaintiff Still Fails to Identify Any Material False Statement or Omission ...................... 5

            1. The Opposition Ignores that the Alleged Difficulties Were Disclosed ....................... 6

            2. The Challenged Statements Are Protected by the PSLRA's Safe Harbor for Forward-Looking Statements ....................................................................................... 8

            3. Many of the Challenged Statements Are Puffery or Opinion ..................................... 9

            4. Plaintiff's Challenge Amounts to Inactionable Fraud-By-Hindsight ......................... 9

        D. Plaintiff Fails to Plead Loss Causation ............................................................................. 9

    II. THE OPPOSITION SEEKS TO PICK AND CHOOSE FROM CITATIONS ................... 10

CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                        **Page**

*In re 21st Century Holding Co. Sec. Litig.*,
   2008 WL 5749572 (S.D. Fla. Nov. 7, 2008)..................................................................3

*In re AFC Enters. Sec. Litig.*,
   348 F. Supp. 2d 1363 (N.D. Ga. Dec. 28, 2004)..........................................................5

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999)..................................................................................10

*Carvelli v. Ocwen Fin. Corp.*,
   934 F.3d 1307 (11th Cir. 2019)....................................................................................8

*Charter Twp. of Clinton Police and Fire Ret. Sys.v. LPL Fin. Holdings Inc.*,
   2019 WL 13178511 (S.D. Cal. Mar. 29, 2019).............................................................4

*City of Warren v. Teleperformance SE*,
   2024 WL 2320209 (S.D. Fla. May 22, 2024)...............................................................4

*In re Criimi Mae, Inc. Sec. Litig.*,
   94 F. Supp. 2d 652 (D. Md. 2000)...............................................................................5

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)...................................................................................................10

*Einhorn v. Axogen, Inc.*,
   42 F.4th 1218 (11th Cir. 2022).....................................................................................8

*FindWhat Inv'r Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011)....................................................................................8

*Freedman v. St. Jude Med., Inc.*,
   4 F. Supp. 3d 1101 (D. Minn. 2014)............................................................................9

*Gonzalez v. Cano Health, Inc.*,
   2024 WL 4415216 (S.D. Fla. Oct. 4, 2024).................................................................3

*Halbert v. Credit Suisse AG*,
   402 F. Supp. 3d 1288 (N.D. Ala. Aug. 22, 2012).........................................................4

*Jones v. Bank of Am., N.A.*,
   564 F. App'x 432 (11th Cir. 2014)...............................................................................9

*Kasilingam v. Tilray, Inc.*,
   2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021).............................................................5

*Keippel v. Health Ins. Innovations, Inc.*,
  2019 WL 5698329 (M.D. Fla. Nov. 4, 2019)......................................................................... 9

*Kosowsky v. Icahn Enters., L.P.*,
  748 F. Supp. 3d 1303 (S.D. Fla. Sept. 13, 2024)................................................................. 4

*Krukever v. TD Ameritrade, Inc.*,
  337 F. Supp. 3d 1227 (S.D. Fla. 2018)................................................................................ 9

*Laurent v. Potter*,
  405 F. App'x 454 (11th Cir. 2010)..................................................................................... 10

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013).......................................................................................... 10

*Nandkumar v. AstraZeneca PLC*,
  2023 WL 3477164 (2d Cir. May 16, 2023).......................................................................... 2

*Owl Creek I, L.P. v. Ocwen Fin. Corp.*,
  2018 WL 4844019 (S.D. Fla. Oct. 4, 2018).......................................................................... 3

*Plymouth Cnty. Ret. Sys. v. Carter's Inc.*,
  2011 WL 13124501 (N.D. Ga. Mar. 17, 2011).................................................................... 2

*Primavera Inv'rs v. Liquidmetal Techs., Inc.*,
  403 F. Supp. 2d 1151 (M.D. Fla. 2005).............................................................................. 3

*Puchtler v. Barclays PLC*,
  2025 WL 887502 (S.D.N.Y. Mar. 21, 2025)........................................................................ 4

*Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*,
  111 F. Supp. 3d 1336 (S.D. Fla. 2015)................................................................................ 4

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
  2013 WL 3295951 (S.D. Fla. Apr. 19, 2013)...................................................................... 2

*In re Sci. Atlanta, Inc., Sec. Litig.*,
  239 F. Supp. 2d 1351 (N.D. Ga. 2002)................................................................................ 5

*Shupe v. Rocket Cos., Inc.*,
  660 F. Supp. 3d 647 (E.D. Mich. 2023)............................................................................... 2

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)........................................................................................................... 10

*Theodore v. Purecycle Techs., Inc.*,
  2023 WL 4035880 (M.D. Fla. June 15, 2023).................................................................... 4

*Thompson v. RelationServe Media, Inc.*,
    610 F.3d 628 (11th Cir. 2010)......................................................................................................2

*In re Tower Group Int'l, Ltd. Sec. Litig.*,
    2015 WL 5813393 (S.D.N.Y. Sept. 18, 2015)..............................................................................5

*In re Witness Sys., Inc. Sec. Litig.*,
    2008 WL 9020540 (N.D. Ga. Mar. 31, 2008)..............................................................................3

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B)...................................................................................................................3

## TABLE OF ABBREVIATIONS[1]

| | |
|---|---|
| ¶ | Paragraph of Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws, filed on Mar. 26, 2025 (ECF No. 61) |
| Amended Complaint or Complaint | Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws, filed on Mar. 26, 2025 (ECF No. 61) |
| CW(s) | Confidential witness(es) |
| Decl. | Declaration of Carl Hudson in Support of Defendants' Motion to Dismiss the Amended Complaint for Violations of the Federal Securities Laws (ECF No. 70) |
| ECF | Docket entries from *Kloster v. Lilium N.V., et al.*, Case No. 24-81428-CIV-SMITH (S.D. Fla.) |
| Ex. | Exhibit to the Declaration of Carl Hudson in Support of Defendants' Motion to Dismiss the Amended Complaint for Violations of the Federal Securities Laws |
| Exchange Act | Securities Exchange Act of 1934 |
| Lilium or the Company | Lilium, N.V. |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq*. |

---

[1] Emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphasis have been omitted.

## PRELIMINARY STATEMENT

Pleading securities fraud is not easy. Nor should it be: after decades of abusive and meritless lawsuits, Congress imposed a stringent pleading standard that requires a plaintiff to plead facts (rather than conjecture and innuendo), to plead them with particularity, and to articulate clearly each of the elements of the claim: a material falsehood or omission, made knowingly, that actually caused plaintiff's losses (as opposed to innocent factors). Plaintiff's Complaint—already amended once—fails on each element.

First, Plaintiff fails to plead scienter: that any Defendants knew the challenged statements to be false at the time they were made. Successful complaints are usually replete with detail about the state of mind of each defendant, pleaded separately; facts such as meetings attended, discussions had; incriminating admissions. Lacking this detail, Plaintiff adopts the excuse of all weak complaints: his allegations should be evaluated "collectively." *Infra* at I.B. But that is meaningless when each allegation is just an empty conclusion or unsupported speculation. That Plaintiff or an anonymous former employee disagreed with the direction of the Company does not show that any executive knew a statement to be wrong.

Second, Plaintiff's inability to plead scienter as to any false statement is understandable: Lilium made no false statements. Plaintiff does not and cannot contest that the Company's disclosures were scrupulously correct. Instead, the Opposition doubles down on a deficient theory that Lilium should have anticipated, months in advance, the collapse of the German federal government coalition. That is absurd: Lilium's business is aircraft, not divination.

Third, Plaintiff is unable to tie his alleged losses to any disclosure of fraud. In an ironic twist, Plaintiff *bought more Lilium stock* after the purported "truth" came out—that a committee in the German parliament decided behind closed doors to back out of the funding the executive branch had discussed with Lilium. That Lilium's executives, who were deeply invested in the company personally, lost even more money than Plaintiff also belies any notion of fraud.

This lawsuit does not belong in court, and no number of amendments can fix it. It should be dismissed with prejudice.

## ARGUMENT

I. **PLAINTIFF FAILS TO PLEAD SECURITIES FRAUD UNDER SECTION 10(b)**

  A. **The Opposition Illustrates that the Complaint Suffers from Puzzle-Pleading**

The Opposition does not contest that the Complaint relies on long block quotations from

Lilium's disclosures, running multiple pages, with inconsistent emphases, and juxtaposes the same list of six alleged problems. Opp. at 4; Mot. at 5 & n.2.[2] The Opposition instead contends that the Complaint sufficiently "organizes" the statements under "identifiable headings," and that the quotations provide "full context." Opp. at 4. But the *only* heading above or throughout the challenged statements is "Materially False and Misleading Statements Issued During the Class Period." ¶ 28. The quotes do not provide "context," nor specify which alleged falsehood applies to which part of the quoted text.[3] That opposing counsel found their pleading so confusing so as to agree with Defendants' categorization, *compare* Mot. 12–18 *with* Opp. 9–14, does not excuse their failure to plead "with specificity why and how each statement is materially false or misleading." *Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *2 (2d Cir. May 16, 2023).[4]

### B. Plaintiff Fails to Allege a Strong Inference of Scienter

The Opposition contends that the Complaint's insufficient scienter allegations can be credited "collectively." Opp. at 4. But courts dismiss complaints such as Plaintiff's, where the allegations alone and as a whole are unconvincing. *E.g.*, *Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, 2011 WL 13124501, at *13 (N.D. Ga. Mar. 17, 2011) (rejecting scienter allegations taken individually and "as a whole" based on confidential witnesses, motive and opportunity, compensation, and core operations); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 634–35 (11th Cir. 2010) (affirming dismissal of scienter allegations analyzed "holistically").

#### 1. The Opposition Cannot Defend the Dispositive Flaws of the CWs

The Opposition does not dispute that the Complaint relies on CWs who never interacted with any Individual Defendant. *See* Mot. at 7–8. It ignores that this failure is dispositive. Opp. at 6–7; *e.g.*, *In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951, at *18 (S.D. Fla. Apr. 19, 2013) (dismissing where no CWs "interact[ed] with individual Defendants").

Plaintiff's own sparse authority is inapposite, Opp. at 8, and still requires a CW to show what defendants *actually knew*. *Shupe v. Rocket Cos., Inc.*, 660 F. Supp. 3d 647, 680 (E.D. Mich.

---

[2] The Opposition suggests that Plaintiff's own lawyers may be confused by their pleadings. *Compare* Opp. at 9 (challenging statement regarding "active dialogue with sovereign entities") *with* ¶ 28 (same statement inconsistently emphasized), ¶ 30 (not emphasized).

[3] Indeed, the Opposition ignores many of the six alleged issues in arguing certain categories of misstatements were misleading. *See, e.g.*, Opp. at I.C.2 (not referencing imminent insolvency); I.C.3 (not referencing supply chain). How are the Court or Defendants to know which apply?

[4] Invoking cases not dismissed for puzzle pleading—including a case brought by the SEC and *not subject* to the PSLRA, Opp. at 4—only highlights the Complaint's deficiencies.

2023) (5 CWs interacted with personnel reporting directly to defendants); *Owl Creek I, L.P. v. Ocwen Fin. Corp.*, 2018 WL 4844019, at *11 (S.D. Fla. Oct. 4, 2018) (specific "reports" allegedly shared with "Vice President of Compliance"). None support that a CW's *assumptions* of what defendants knew are sufficient. Mot. at 8.

The Opposition also misses the point of the CWs' lack of qualifications. Opp. at 7–8. At a different company, a purchaser or an engineer could possibly have knowledge of their companies' fundraising. The Complaint here does not allege that *these* CWs, lacking an obvious connection to fundraising, had such knowledge. Mot. at 6–7. The Opposition's plea to view the allegations "holistically," Opp. at 7–8, fails in light of the prevailing authority facing CWs and denying the same. *In re 21st Century Holding Co. Sec. Litig.*, 2008 WL 5749572, at *9 (S.D. Fla. Nov. 7, 2008). Last, Congress expressly provided "all discovery . . . shall be stayed during the pendency of any motion to dismiss" in securities cases. 15 U.S.C. § 78u-4(b)(3)(B). That Plaintiff asks for discovery, Opp. at 7–8, is an admission that the Complaint cannot be saved.

### 2. The Opposition Fails to Support the Claim that Management Was "Directly Involved" in the Imaginary Fraudulent Scheme

The Motion detailed that alleging scienter based solely on a defendant's title fails. Mot. at 9. The Opposition responds with more generic arguments about "management" and review of SEC filings. Opp. at 5. These generalities would apply to all executives and do not establish scienter. *In re Witness Sys., Inc. Sec. Litig.*, 2008 WL 9020540, at *8 (N.D. Ga. Mar. 31, 2008) ("mere job titles" and "signatures on [] SEC filings" "fall well short" of PSLRA standard).[5]

The Opposition simply ignores the authority in the Motion holding that alleging senior management positions is also insufficient. Mot. at 9. "[W]ithout alleging Defendants were exposed to or made aware of sufficient facts, including reports, communications, discussions, or documents" the opposition fails to present any "inference of fraudulent intent that is at least as compelling as any opposing inference of nonfraudulent intent." *Gonzalez v. Cano Health, Inc.*, 2024 WL 4415216, at *13 (S.D. Fla. Oct. 4, 2024) (dismissing). Silence waives the argument.

### 3. The Opposition Repeats an Insufficient Core Operations Theory

The Opposition rehashes the oft-failed core operations theory, Mot. at 10, arguing "the Jet was Lilium's sole product and sole source of potential profit." Opp at 5. But the PSLRA

---

[5] Plaintiff's sole authority, Opp. at 5, involved three CWs with direct access to individual defendants, who admitted contradictory knowledge and encouraged a CW to lie. *Primavera Inv'rs v. Liquidmetal Techs., Inc.*, 403 F. Supp. 2d 1151, 1158 (M.D. Fla. 2005).

"requires more" than "merely alleging" that something "is a core operation" to establish scienter. *Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1376 (S.D. Fla. 2015) (dismissing fully as to several defendants); Mot. at 10. Nor is it sufficient that core operations "support[s]" scienter. Opp. at 5 n.3. The "core operations doctrine . . . is not meant to excuse Plaintiffs from offering specific facts." *Kosowsky v. Icahn Enters., L.P.*, 748 F. Supp. 3d 1303, 1323 (S.D. Fla. Sept. 13, 2024) (dismissing). The Opposition offers none.

### 4. The Opposition's "Repetition" and "Active Communication" Theories Are Contrary to the Law and Were Not Alleged

The Opposition attempts two new allegations, but "[a] party may not insert new claims and allegations by way of a brief in opposition to a motion to dismiss." *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1309 n.6 (N.D. Ala. Aug. 22, 2012). Both also fail for other reasons.

The Opposition's first new allegation is that repeating fundraising statements shows scienter. Opp. at 6. Beyond those statements not being false, *infra* at I.C, "the simple repetition of an allegedly false statement does not indicate that the statement was made with scienter." *Puchtler v. Barclays PLC*, 2025 WL 887502, at *17 (S.D.N.Y. Mar. 21, 2025).[6]

The second new allegation is that the CFO and CEO made "public statements regarding Lilium's fundraising progress" and should somehow be *assumed* to have spoken fraudulently. Opp. at 6. That eviscerates the scienter element. Putting aside that falsity is not alleged, *infra* at I.C, this repeats the Complaint's frequent logical leap: that if a Defendant worked with or spoke about something, they must have *lied* about it. *See supra* at I.B.2–3. Indeed, even the CWs make this assumption. *E.g.*, ¶ 43 (alleging "there's no way [Defendant Roewe] could not have known" about purported fraud, because his purported "whole thing" was fundraising"). As the Motion observed, courts disapprove of these sorts of "automatic presumption[s] of comprehensive knowledge on the part of management." *Charter Twp. of Clinton Police and Fire Ret. Sys.v. LPL Fin. Holdings Inc.*, 2019 WL 13178511, at *7 (S.D. Cal. Mar. 29, 2019) (dismissing); Mot. at 10.

### 5. The Opposition's "Temporal Proximity" Argument Ignores the Cause of the Bankruptcy, and Baldly Misstates Lilium's Disclosures

The Opposition fails to confront another dispositive point: the Complaint never alleges that *anyone* at Lilium, let alone the Individual Defendants, knew that the German federal

---

[6] The Opposition's extreme cases do not apply. Opp. at 6; *City of Warren v. Teleperformance SE*, 2024 WL 2320209 (S.D. Fla. May 22, 2024) (company touted "Social Responsibility," but exposed moderators to graphic content); *Theodore v. Purecycle Techs., Inc.*, 2023 WL 4035880 (M.D. Fla. June 15, 2023) (SEC investigation after executives touted qualifications).

government would abandon the Company. Mot. at 10–11. The Opposition relies only on the timing of the bankruptcy. Opp. at 8. But authority consistently holds this timing is insufficient to show scienter. Mot. at 11; *In re Criimi Mae, Inc. Sec. Litig.*, 94 F. Supp. 2d 652, 662 (D. Md. 2000) ("mere proximity" between challenged statements and bankruptcy does not show scienter).

With no answers on this point, the Opposition also borders on bad faith by arguing Defendants failed to disclose that the loss of German government funding could lead to insolvency. Opp. at 8. *Defendants disclosed that very fact*. *Infra* at I.C. Plaintiff admits this disclosure in a footnote, but criticizes that it appeared in an "and/or" list of severe negative possibilities of failing to secure government funding. Opp. at 8 n.4. The Opposition provides no authority finding that disclosing a negative outcome that *did* occur alongside other potential negative outcomes is insufficient; neither case cited in the footnote states this. *Id.*

### 6. The Opposition's Rebranded Motive and Opportunity Allegations Fail

Defendants' motion highlighted that Plaintiff's "compensation" allegations (which apply to only one defendant) are a variation on the "motive and opportunity" theme that courts have routinely rejected. Mot. at 11. The Opposition does not acknowledge this authority. Opp. at 8–9. More importantly, the Opposition ignores that the Company's executives themselves lost millions of dollars in valuable equity, since they were themselves invested in the company. Mot. at 1. Why the executives would defraud themselves is left unexplained.

The Opposition last assumes scienter because one defendant was paid well. Opp at 8–9.[7] Concluding that pay was "above average," *id.* at 9, also fails. *In re Tower Group Int'l, Ltd. Sec. Litig.*, 2015 WL 5813393, at *6 (S.D.N.Y. Sept. 18, 2015) (dismissing where no "specific facts" that auditor "compensation . . . was exorbitant and well above average," and because "that fact standing alone would not suffice to establish motive"). Nor does (or can) Plaintiff contend that the individual defendants sold any shares. Mot. at 1.[8]

### C. Plaintiff Still Fails to Identify Any Material False Statement or Omission

The Motion showed that all of the allegedly omitted facts were disclosed and that the

---

[7] The Opposition cites a pay package with facts not alleged here. *In re Sci. Atlanta, Inc., Sec. Litig.*, 239 F. Supp. 2d 1351, 1366 (N.D. Ga. 2002) (known, contemporaneous decline in demand and sales). In another citation, the court *rejected* a similar argument even facing "extravagant" pay. *In re AFC Enters. Sec. Litig.*, 348 F. Supp. 2d 1363, 1374 (N.D. Ga. Dec. 28, 2004).

[8] The Opposition confirms the corporate scienter allegations cannot stand independently. Opp. at 9; *Kasilingam v. Tilray, Inc.*, 2021 WL 4429788, at *13 (S.D.N.Y. Sept. 27, 2021) (dismissing given "no specific corporate scienter allegations independent from" individual allegations).

challenged statements themselves were inactionable under bedrock securities law. Mot. at 12–18. In response, the Opposition simply ignores that these disclosures exist and states general legal principles unconnected to the Complaint's allegations. That attempt confirms the nature of Plaintiff's challenge: an inactionable hindsight critique that because Lilium declared insolvency, its prior positive statements must have been misleading.

### 1. The Opposition Ignores that the Alleged Difficulties Were Disclosed

**Fundraising and Insolvency**. The Opposition does not contest the accuracy of Lilium's fundraising figures or financial statements. Mot. at 12. Instead, the Opposition quibbles that fundraising was not a "success" or "significant progress," and that pre-delivery statements were not "additional support" for Lilium's funding plan. Opp. at 9–10. Its reasoning fails.

The Opposition claims that Defendants were "duty-bound" to also disclose the "adverse information that cuts against the positive information," Opp. at 11, curiously ignoring that everything complained of was disclosed. Mot. at 12–15. For example, the Opposition asserts that Defendants "knew that even with Lilium's recent fundraising, it did not have sufficient funds to meet its objectives," Opp. at 10, ignoring that Lilium told investors the same, *e.g.*, Mot. at 13 ("we do not have sufficient funds to fund our operations for the foreseeable future"; Lilium requires additional capital "immediately").[9] But Plaintiff's misapprehension runs deeper. The Opposition contends that fundraising and insolvency-related statements were misleading for hiding that without the German government loan guarantee, Lilium would go bankrupt in October 2024. Opp. at 10, 13–14. This theory requires a willing disregard of Lilium's disclosures (let alone Defendants' Motion) and a fundamental misunderstanding of how bankruptcy works.

As Defendants explained, in a disclosure selectively quoted in the AC, ¶¶ 47–49, Lilium warned: "Should the Federal Government of Germany not approve the guarantee . . . management **will** be forced to implement significant cost containment measures, materially reduce the scope of our operations, and/or make filings . . . under applicable insolvency laws with respect to Lilium and its subsidiaries." Mot. at 10 (citing Ex. 10 at 9).[10] The Opposition's

---

[9] Plaintiff handwaves the annual report's risk factors—which explicitly qualified the challenged statements from ¶¶ 28–30, *see* Ex. 4 at 24; Ex. 11 at 4—by arguing that unprofitability did not negate "specific representations and omissions," Opp. at 11, ignoring that the report also warned of "substantial doubt" as to Lilium's prospects as a "going concern." Mot. at 15.

[10] The Opposition also selectively quotes the €32 million funding statement, Opp. at 13–14, ¶ 49, ignoring that the very next sentence caveats that some of the funds were "contingent upon a positive decision from the Federal Government of Germany." Ex. 10 at 9.

failure to confront this disclosure in falsity thus becomes all the more incredible in arguing that "[i]t was not a 'may' but a 'will'" as to bankruptcy. Opp. at 14. It bears repeating that the Complaint challenges statements from this disclosure while omitting this key warning.[11]

Nor could Defendants have responsibly disclosed at any point before the German guarantee collapsed "the specific fact that Lilium would run out of cash in October 2024." Opp. at 11. Companies that file for insolvency can (and often do) still have cash. But the Opposition posits without basis that Lilium knew it would exhaust its reserves in October 2024. *Id.* Not so. *See*, *e.g.*, ¶¶ 47–48 (describing Lilium's financials). As Lilium disclosed, the German guarantee was fundamental to its continued operation. *See* ¶ 32 (Lilium "expects to fund" ongoing operations with German guarantee); Opp. at 10 (quoting same); *supra* at 6. The German loan collapse prevented Lilium from covering its liabilities with assets, necessitating insolvency protection. That timing was dependent on the German government decision, not Lilium's cash running out. Plaintiff does not (and cannot) plead otherwise.

**Supply Chain**. The Opposition contends that Defendants "misrepresented the reasons" the first manned flight was delayed and "concealed" that the Company needed the first manned flight to unlock financing. Opp. at 12. Neither contention is true.

*Reasons for delay*. The Opposition maintains that Lilium misled in citing "industry-wide supply chain constraints" when "the issues" were Lilium-specific. Opp. at 12. This assumes that industry-wide supply chain issues cannot impact custom parts. But the two are not mutually exclusive, and Plaintiff cannot plead that neither Lilium nor *any* of its suppliers experienced any supply chain issues in 2024. Mot. at 14. Nor were reasonable investors unaware that Lilium required custom parts, that Honeywell was one of many custom-part suppliers, and that supply chain issues had already and may again delay receipt of those parts. *Id.* at 13. Plaintiff asserts this warning was insufficient because the risk had already occurred. Opp. at 13 n.5. But unlike in *FindWhat Inv'r Grp. v. FindWhat.com*, where general warnings did not disclose known system breaches, 658 F.3d 1282, 1299 (11th Cir. 2011), Lilium disclosed that delays had already occurred, may happen again, and promptly informed investors when they did. ¶ 33.

*Impact of delay*. The Opposition fully ignores that Lilium disclosed that it "may be

---

[11] Authority regarding undisclosed "adverse information" is thus inapplicable. Opp. at 11. Beyond supposedly contrary information being disclosed, the Opposition utterly fails to explain how that information "directly contradict[s]" any of the challenged statements. *Id.*

unable to collect" or need to "return pre-delivery payments" if contracted milestones, like first manned flight, were missed. Mot. at 14. The supply chain statements challenge fails accordingly.

### 2. The Challenged Statements Are Protected by the PSLRA's Safe Harbor for Forward-Looking Statements

The Opposition further contends that the safe harbor does not apply because (i) the statements are "not actually forward looking" and (ii) the cautionary language was insufficient. Opp. at 14–15.[12] The Opposition is wrong on both fronts.

**The statements are forward-looking.** The Opposition accuses Defendants of "cherry pick[ing]" statements and "omitting substantive portions" supposedly referring to present facts. Opp. at 14. Which of the countless forward-looking statements, Mot. at 15–16, this refers to or how they involve the present is left to the imagination. *See* Opp. at 14–15. Instead, the Opposition cites general legal principles unconnected to the alleged misstatements. For example, all agree that the safe harbor does not apply to misstatements of historical fact. *Id.* at 15. But each statement Defendants identified as protected involved a "prediction, projection, or plan," *Carvelli*, 934 F.3d at 1324, whose "truth or falsity is discernible only after it is made." *Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1223 (11th Cir. 2022); Mot. at 15–16 (what Lilium "expects," "estimates," "targeted," and others). Plaintiff also ignores that Lilium identified many of the challenged statements as forward-looking in its disclosures. Mot. at 15.

The alleged omission of (i) imminent insolvency without the German guarantee or (ii) payments depending on the first manned flight does not remove safe harbor protection. Opp. at 15. First, both were disclosed. *Supra* at I.C.1. Second, those alleged omissions do not render the statements misleading. That Lilium *expected* the German loan to close is not rendered misleading by the idea that without it, Lilium would be insolvent. Nor are Lilium's *targets* for first manned flight rendered misleading by the idea that missing them would hold up pre-order payments.

**The cautionary language warned of the exact risks.** Plaintiff contends that Lilium's risk warnings "did not tell investors the truth." Opp. at 15. They demonstrably did. *See* Mot. at 12–16 (detailing risk warnings); *supra* at I.C.1. Whether investors like Plaintiff heeded those

---

[12] Plaintiff posits an actual knowledge "exception" to the safe harbor, Opp. at 15, which does not exist. Beyond not pleading "actual knowledge" of falsity, *supra* at I.B; Mot. at I.B, Plaintiff misunderstands that the safe harbor "is framed in the disjunctive—it provides three independent, alternative means of inoculating forward-looking statements." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1326 (11th Cir. 2019).

warnings is a different matter, and cannot strip safe harbor protection.

### 3. Many of the Challenged Statements Are Puffery or Opinion

Plaintiff does not contest, and thus concedes, that several challenged statements are inactionable opinions. Mot. at 15–16; *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."). Retreating to puffery, Plaintiff contends "[w]hen considered in context, the statements are capable of objective verification." Opp. at 16. Which statements or how they can be objectively verified is, again, left unsaid. Perhaps for good reason.

As the Motion explained, courts routinely dismiss as puffery the *exact* language the Complaint seeks to challenge. Mot. at 17–18; *see also* Opp. at 9–10, 11 (challenging "progress," "significant progress," and "milestones" statements).[13] The Opposition comes closer to the mark in conceding that some "general positive statements . . . alone are not actionable," then immediately strays in faulting Defendants for not addressing "the real-world experience of investors." Opp. at 16. What that means, let alone its legal significance, is a mystery, especially in light of Lilium's ample warnings and disclosures before and during the class period.[14]

### 4. Plaintiff's Challenge Amounts to Inactionable Fraud-By-Hindsight

The Opposition conjures an "omission of material adverse facts" to avoid that Plaintiff pleads fraud-by-hindsight. Opp. at 16. But the alleged omitted facts, *id.*, read like a checklist of exactly what Lilium did disclose. Mot. at 12–15, 18; *supra* at I.C.1. Plaintiff hopes to infer fraud out of Lilium's insolvency. The federal securities laws prohibit that tactic.[15]

### D. Plaintiff Fails to Plead Loss Causation

The Opposition ignores that Lilium's bankruptcy was triggered by the decommitment of German federal funding, not the slew of unrelated facts from the Complaint. Opp at 18–19; Mot.

---

[13] Rather than respond to that authority, Plaintiff instead cites two cases for (i) an illustrative example of puffery (*Omnicare*) and (ii) a pre-PSLRA comment on whether, in the merger context, a determination of "high" value or that the transaction was "fair" had a factual basis (*Virginia Bankshares*). Opp. at 16. Plaintiff offers no analysis of those cases' relevance.

[14] *Keippel v. Health Ins. Innovations, Inc.*, 2019 WL 5698329 (M.D. Fla. Nov. 4, 2019), Opp. at 16, is inapposite given Lilium disclosed the very problems alleged to have been withheld.

[15] Plaintiff ignores Defendants' authority, Mot. at 18, in favor of inapposite cases. Opp. at 17; *Krukever v. TD Ameritrade, Inc.*, 337 F. Supp. 3d 1227 (S.D. Fla. 2018) (no Exchange Act claims); *Freedman v. St. Jude Med., Inc.*, 4 F. Supp. 3d 1101, 1119 (D. Minn. 2014) (statements regarding safety of medical devices rendered misleading by contemporaneous negative reports).

at 19. Nor does it respond to authority dismissing on loss causation where a purported "corrective disclosure" did not "relate back to the misrepresentation [but] to some other negative information about the company." *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013).

Plaintiff's approach is now familiar: describe generally when loss causation allegations sufficed in well-pleaded cases.[16] Opp. at 17. According to Plaintiff, any stock drop can then establish loss causation. Opp. at 18 (arguing that after "each disclosure, [Lilium's] share price went down" and that "[n]othing more is required at the pleading stage"). This is not the law. As the Supreme Court held, the loss causation requirement is intended "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

The Opposition also tries to obscure that no Defendant has been served in this case. Opp. at 18. In trying to handwave this failure, Plaintiff misinterprets case law holding that such service violations are dispositive even if notice was given; Defendants cannot be faulted for mounting a defense despite this service deficiency. Mot. at 20; *Laurent v. Potter*, 405 F. App'x 454 (11th Cir. 2010) ("[A]ctual notice of the pending suit . . . does not excuse defective[] . . . service.").

## II. THE OPPOSITION SEEKS TO PICK AND CHOOSE FROM CITATIONS

The Opposition last argues the Court should blind itself to documents critical to the Complaint. Opp. at 18–20. The Opposition does not contest that, as the Motion's supporting declaration explained, the documents were incorporated by reference or are judicially noticeable. Decl. at 1 n.1. Further, "[p]reventing courts from considering," as the Opposition urges, "the entirety of a company's relevant SEC filings," among other documents, "would allow . . . snippets from the documents out of context to survive a motion to dismiss, notwithstanding the fact that dismissal would have been appropriate if the statements had been read in context." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (requiring courts to consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). This case demonstrates why, as Plaintiff ignores disclosures that doom his claims.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

[16] The Opposition ignores circuit-level authority requiring pleading of loss causation with particularity, but itself only cites district court authority. Opp. at 18; Mot. at 18–19.

Dated: April 30, 2025                                  Respectfully submitted,


                                                           */s/ Bradley S. Shraiberg*
Bradley S. Shraiberg
Roger Franks (admitted *pro hac vice*)
Bradley S. Shraiberg (Fla. Bar No. 121622)
Patrick Dorsey (Fla. Bar No. 0085841)

**SHRAIBERG PAGE P.A.**
2385 NW Executive Center Dr Ste 300
Boca Raton, FL 33431-8530
(561) 443-0800
bss@slp.law
pdorsey@slp.law

Doru Gavril (admitted *pro hac vice*)
Boris Feldman (admitted *pro hac vice*)
Carl Hudson (admitted *pro hac vice*)
**FRESHFIELDS US LLP**
855 Main Street
Redwood City, CA
(650) 618-9250
doru.gavril@freshfields.com
boris.feldman@freshfields.com
carl.hudson@freshfields.com

Adam Rosenfeld (admitted *pro hac vice*)
**FRESHFIELDS US LLP**
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
adam.rosenfeld@freshfields.com


*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on 30th day of April 2025.

                                                     */s/ Bradley S. Shraiberg*
                                                    Bradley S. Shraiberg