**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-81428-CIV-SMITH**

MARKUS KLOSTER, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

LILIUM N.V., *et al*.,

Defendants.
_______________________________/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants', Lilium N.V. ("Lilium" or the "Company"), Klaus Roewe ("Roewe"), and Johan Malmqvist ("Malmqvist") (collectively "Defendants"), Motion to Dismiss Plaintiff's Amended Complaint ("Motion") [DE 69], Plaintiff's Response in Opposition [DE 71], and Defendant's Reply [DE 72]. Plaintiff's Amended Complaint alleges that Defendants violated the Securities Exchange Act of 1934 (the "Exchange Act") by making materially false and misleading statements about the corporate Defendant, Lilium. Once the falsity of the statements became clear, the Company's stock declined in value, causing Plaintiff and class members losses and damages. The Amended Complaint sets forth two counts: Count I alleges violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, against all Defendants and Count II alleges violations of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the individual Defendants. For the reasons set forth below, the Motion is granted.

## I. BACKGROUND[1] AND ADDITIONAL INFORMATION[2]

Plaintiff brings this proposed class action[3] against Defendants on behalf of all persons and entities that purchased Lilium securities between June 11, 2024, and November 3, 2024. Plaintiff alleges Lilium, a German company, together with its consolidated subsidiaries, was a start-up company engaged in the research and development of a revolutionary electric aircraft ("the Lilium Jet"). Lilium had been engaging in pre-order sales of the Lilium Jet. After Lilium failed to obtain government backed funding, it became insolvent and was forced to shut down operations leading to the instant lawsuit.

In the first quarter of 2024, Lilium published its Annual Report on a Form 20-F for the fiscal year December 31, 2023. The Form 20-F included a "Risk Factors Summary" which outlined that:

- "We have incurred significant losses and expect to incur significant expenses and continuing losses for the foreseeable future, and we may not achieve or maintain profitability, and there is substantial doubt about our ability to continue as a going concern."

- "Our current forecast indicates that we do not have sufficient funds to fund our operations for the foreseeable future."

- "We have a limited operating history and face significant challenges to develop, certify, manufacture and launch our products and services in a new industry, urban and regional air transportation services. Our Lilium Jet remains in development and is not yet type certified, and there can be no guarantee it will ever be type certified."

- "COVID-19 could also affect the operations of our suppliers and business partners, which has resulted and may continue to result in delays or disruptions in the supply

[1] Plaintiff's Amended Complaint is 45 pages. Therefore, what follows is only a summary of the Amended Complaint. As needed, the Court will discuss more specific allegations in the discussion section.

[2] This Court will take notice of "relevant public documents required to be filed with the SEC, and actually filed," but for the sole purpose of determining what the documents contain. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

[3] The Class Period begins on June 11, 2024, and ends on November 3, 2024.

chain of our components, parts and materials and which could delay the development and rollout of Vertiport networks and our commercial operations."

- "Any delays in the development, certification, manufacture and commercialization of the Lilium Jets and related technology, such as battery technology or electric motors, may adversely impact our business, financial condition and results of operations."

Then on June 11, 2024, Defendants Roewe and Malmqvist, Lilium's Chief Executive Officer and Chief Financial Officer, respectively, issued a shareholder Form 6-K with the SEC. The June 2024 Form 6-K indicated that Lilium had strong funding and informed investors that Lilium "[s]uccessfully completed fundrais[ing] with $114 million gross proceeds," that "[d]ue diligence started for intended loan with guarantee from the German Federal Government and the State of Bavaria," and that "Lilium [was] in advanced discussion with the French government toward a government guarantee-backed loan." The June 2024 Form 6-K also reported an optimistic supply chain and manufacturing forecast stating that "[d]uring the first quarter of 2024, major aircraft structures and systems continued to arrive at Lilium from suppliers, enabling Lilium to advance aircraft build and verify quality and interfaces for the first set of Lilium Jets." The June 2024 Form 6-K also noted that Lilium's "engineering and manufacturing teams [were] currently working [at] full speed to achieve [Lilium's] next critical milestone: first piloted flight of the Lilium Jet, targeted for the end of the year."

On July 17, 2024, Lilium filed a Form 6-K with the SEC signed by Defendant Roewe. While the July 17, 2024, Form 6-K still touted fundraising success, Lilium stated it had "incurred significant losses and expect[s] to incur significant expenses and continuing losses for the foreseeable future, and Lilium may not achieve or maintain profitability, and there is substantial doubt about [Lilium's] ability to continue as a going concern." Lilium informed investors that its "business plans require a significant amount of capital" but "expect[ed] to fund its ongoing

operations until type certification and entry into service with existing cash on hand, non-dilutive methods of financing such as debt instruments, government support (including, [the] previously announced potential [loans] from the German and French governments)." Lilium also informed investors of altered projections for the first manned flight of Lilium Jets, which would now occur early in 2025, in contrast to the June 11, 2024, Form 6-K which forecasted an end of 2024 test date. Lilium noted that its timeline was dependent in large part upon "the timely delivery from" "third-party suppliers of the required parts for flight testing equipment and the component parts." Lilium explained that it had previously experienced "delays" "in the scheduled deliveries of certain parts for flight testing equipment, component parts of the aircraft, and necessary software" and Lilium detailed "that many of the components for the jet are proprietary and/or novel (e.g., the battery cell technology that [Lilium] intend[s] to use), and as a result have never been manufactured on a commercial scale." Lilium stated that "even if we are successful in developing prototypes and functional iterations of these various components, there can be no guarantee that [Lilium] or [its] suppliers will be able to achieve large-scale, cost-effective commercial production of these components according to [Lilium's] schedule or at all." The shifted projections for flight testing were thus blamed on "supply chain constraints."

Despite Lilium's expectations, on September 30, 2024, Lilium filed a Form 6-K with the SEC titled "2Q24 financial Update," signed by Defendant Roewe, that "indicate[d] that the Lilium Group requires additional capital immediately to continue to fund its ongoing operations." The September 30, 2024, Form 6-K outlined that "[the] ability to access and use pre-delivery payments to fund [] operations may be contingent upon the achievement of certain agreed milestones" and stated that "there can be no assurance that [Lilium] will achieve the milestones [] to trigger pre-delivery payments becoming payable." Also, while the September 30, 2024, Form 6-K forecasted

funding from the Federal Governments of Germany and the Free State of Bavaria, Lilium noted that the Government Loans were "subject to an ongoing governmental approval process." Ultimately the September 30, 2024, Form 6-K informed investors that "[s]hould the Federal Government of Germany not approve the guarantee for the Government Convertible Loan, or should it fail to complete the approval process in the anticipated timeline . . . management will be forced to implement significant cost containment measures, materially reduce the scope of [its] operations, and/or make filings with respect to our financial condition as may be required under applicable insolvency laws with respect to Lilium and its subsidiaries."

Lilium's financial woes came to a head in October 2024. On October 24, 2024, Lilium filed a Form 6-K informing investors that on October 17, 2024, Lilium received an indication that the budget committee for parliament of the Federal Republic of Germany would not approve a 50 million euro guarantee of a contemplated 100 million euros convertible loan for Lilium. "[A]ddition[ally] . . . Lilium and the Free State of Bavaria have not reached an agreement in principle with respect to a guarantee of at least €50 million." Accordingly, the October 24, 2024, 6-K stated that "as a consequence, the managing directors of Lilium subsidiaries have determined they were overindebted and are or will become unable to pay their existing liabilities due."

On November 4, 2024, Lilium filed a Form 6-K with the SEC stating "the Company, after continuing to investigate financing possibilities for the company, had not been able to raise sufficient additional funds to conduct its ongoing business" operations. On November 9, 2025, Plaintiff filed the instant lawsuit accusing Lilium of securities violations. Plaintiff alleges that Defendants concealed material facts about Lilium's financing, pre-order payments, and supply chain issues while expecting to be saved by German government loans, without which insolvency

was certain. The statements that form the basis of Plaintiff's Amended Complaint can be categorized into three different types of statements:

1. Misstatements about Funding, such as:

   - "[F]undraising success," "cash management," and "significant progress on fundraising front." (June 11, 2024, Form 6-K)

   - "[C]ustomary pre-delivery payments will provide an additional support around our longer-term funding plan." (June 11, 2024, Earnings Call)

   - "Lilium is in advanced discussion with the French government toward a government guarantee-backed loan." (June 11, 2024, Form 6-K)

2. Misstatements about the Effect of Delaying Lilium's First Manned Flight and Supply Chain Issues, such as:

   - "At Lilium, our engineering and manufacturing teams are currently working full speed to achieve our next critical milestone: first piloted flight of the Lilium Jet, targeted for the end of the year." (June 11, 2024, Form 6-K)

   - "[W]e continue to deliver our key milestones as we progress to our manned first flight target to occur in late 2024 and entry into service targeted for 2026." (June 11, 2024, Form 6-K)

   - "This timing for the first manned flight test of Lilium Jet, driven by delivery of certain parts of flight-testing equipment, components parts of the aircraft, and software, is due to indirect effects of ongoing industry-wide supply chain constraints." (July 14, 2024, Form 6-K)

3. Omissions about the Risk of Insolvency Without the German Government Guarantee, such as:

   - None of the general risks alerted investors to what Defendants knew would occur without the German guarantee—immediate insolvency.

## II. MOTION TO DISMISS STANDARD

Claims brought under Rule 10b-5 "must satisfy (1) the federal notice pleading requirements [set out in Federal Rule of Civil Procedure 8(a)]; (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b) . . .; and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA")." *FindWhat Inv. Grp. v.*

*FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citations and footnote omitted).

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pled allegations are true and view the pleadings in the light most favorable to the plaintiff. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." This requirement can be met by pleading (1) precisely what statements or omissions were made; (2) the time and place the statements were made and by whom; (3) the content of the statements and how they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Failure to satisfy the pleading requirements of Rule 9(b) is grounds for dismissal of a claim based in fraud. *FindWhat*, 658 F.3d at 1298.

Under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.A. § 78u-4(b)(1). Additionally, if

a claim requires proof "the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b)(2)(A). "Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute." *FindWhat*, 658 F.3d at 1296. If a plaintiff fails to satisfy the PSLRA's pleading requirements, the Court "shall" dismiss the claim. *See* § 78u-4(b)(3)(A).

## III. DISCUSSION

Section 10(b) and Rule10b–5 of the Exchange Act make it unlawful for any individual to employ a manipulative or deceptive device in connection with the purchase or sale of any security. "To allege securities fraud under Rule 10b–5, a plaintiff must show: 1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006). Section 20(a) of the Exchange Act imposes liability on "control persons:"

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . ., unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C.A. § 78t(a). Thus, to state a claim under § 20(a) against the individual Defendants, Plaintiff must allege: (1) that Lilium committed a primary violation of the securities law; (2) that the individual Defendants had the power to control the general business affairs of Lilium; and (3) that the individual Defendants had the requisite power to directly or indirectly control or influence the specific corporate policy that resulted in primary liability. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Thus, if Plaintiff does not adequately plead a claim against

Lilium, Plaintiff's claim against the individual Defendants must fail. Defendants seek to dismiss Plaintiff's Amended Complaint because, inter alia, Plaintiff has not identified any false statements or omissions and Plaintiff has failed to adequately pled scienter. The Court addresses these arguments in turn.[4]

### A. Actionable False Statements or Omissions

Defendants seek dismissal of Plaintiff's Amended Complaint on the basis that each of Plaintiff's alleged false statements and omissions are protected by the PSLRA's Safe Harbor and are properly disclosed. Thus, Defendants contend that Plaintiff has failed to identify any false statements or omissions. As explained below, the Court agrees with Defendants.

#### 1. *Forward-Looking Statements are Protected under the Safe Harbor Rule.*

Defendants argue that many of Plaintiff's challenged statements are protected by the PSLRA's safe harbor provision, 15 U.S.C. § 78u-5, for forward-looking statements and therefore dismissal is warranted. The PSLRA's "safe harbor" provision immunizes "forward-looking" statements. *Carvelli v. Ocwen Fin. Corp*., 934 F.3d 1307, 1324 (11th Cir. 2019). "A forward-looking statement is what it sounds like—a prediction, projection, or plan." *Id*. The "key characteristic of a forward-looking statement is that its truth or falsity is discernible only after it is made." *Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1223 (11th Cir. 2022). Even a statement that depends in part on present-tense observations is due safe-harbor protection if it supports a forward-looking conclusion. *Id*. The safe harbor "is framed in the disjunctive—it provides three

[4] Defendants' contention that Plaintiff's Amended Complaint is a puzzle pleading, a complaint that list various statements released by Defendants followed by a similar list of "specific" reasons alleging generally why the statements are false, is without merit. Plaintiff has identified statements and omissions. Because the Amended Complaint's structure allows Defendants (as they clearly did) and the Court to understand and evaluate the nature of Plaintiff's claims, the Court declines to dismiss the Amended Complaint as a puzzle. *See Sec. & Exch. Comm'n v. Kingdom Legacy Gen. Partner, LLC, No. 216CV441FTM38MRM*, 2017 WL 417093, at *4 (M.D. Fla. Jan. 31, 2017) (declining to dismiss the complaint as a puzzle pleading where it "is plainly evident the Complaint contains sufficiently particularized counts allowing a reader to match up alleged misstatements and omissions with their explanatory counterparts.").

independent, alternative means of inoculating forward-looking statements." *Carvelli*, 934 F.3d at 1326. Thus, the statute protects statements that are (i) accompanied by meaningful cautionary language, (ii) immaterial, or (iii) made without actual knowledge of falsity. 15 U.S.C. §78u-5(c)(1).

a. Misstatements and Omissions Regarding Funding

Defendants made several statements regarding funding and the potential receipt of government loans, such as: "Lilium continues to engage in active dialogue with sovereign entities, strategic partners, prospective customers and stakeholders for further funding initiatives," and "customary pre-delivery payments will provide an additional support around our longer-term funding plan." Defendants contend that these statements are plainly forward-looking and were accompanied by ample risk disclosures. Plaintiff, however, claims that the statements by Lilium overstated the likelihood of obtaining sufficient funding to continue operations and that Defendants never disclosed that the additional funding from pre-order payments was contingent on Lilium's completion of first flight.

Plaintiff's arguments are without merit. For instance, Plaintiff's first challenged statements regarding the engagement of strategic government partners for funding are forward-looking as they only relate to Lilium's planned activities and therefore are not actionable. *See Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999) ("a statement of the plans and objectives of management for future operations, including plans or objectives" is a "forward-looking statement"). Moreover, Pre-class period statements may be used to ascertain the falsity and materiality of the challenged statements. *In re Merck & Co., Inc. Sec. Litig.,* 432 F.3d 261, 272 (3d Cir. 2005). Here, Lilium warned, in its 2023 Form 20-F, and subsequent July 17, 2024, Form 6-K, that there was "no certainty" it would "be successful in obtaining sufficient funding" through any means. *See* (DE

70-1, at 13 and DE 70-3, at 1) ("We will require additional equity or debt financing or government grants or subsidies to finance a portion of our capital expenditures. Such financing might not be available to us in a timely manner or on terms that are acceptable or at all.").

Likewise, the challenged statements which Plaintiff proffers "touted" significant funding progress, like "we have already begun receiving customary collection of pre-delivery payments in connection with pre-orders" and "customary pre-delivery payments will provide an additional support around our longer-term funding plan," are similarly nonactionable. First, the Court notes that the latter statement is an incomplete quote. Lilium's full statement was that Lilium "***believe[d]*** customary pre-delivery payments [would] provide an additional support around [their] longer-term funding plan."[5] In its full context, this statement is clearly forward-looking. Moreover, Lilium's statement concerning the availability of pre-delivery funding was accompanied by cautionary language in its 2023 Form 20-F, which indicated:

> These binding contracts may also provide for our receipt of pre-delivery payments upon the occurrence of various milestones achieved by Lilium. If we are unable to deliver the Lilium Jets under contract within the timeframes required or at all, we may be unable to collect such pre-delivery payments or may need to return pre-delivery payments we have received.

(2023 Form 20-F, at 23.) Lilium also provided relevant disclosures in its July 17, 2024, Form 6-K which detailed that Lilium's "ability to access and use pre-delivery payments to fund [its] operations may be contingent upon the achievement of certain agreed milestones and customary financial thresholds." Lilium made no assurances that it would be able to achieve the milestones necessary to access and use pre-delivery payments. (July 17, 2024, Form 6-K, at 1.) And Lilium specifically stated that the availability of funds was tied to flight performance:

> If we are unable to deliver the Lilium Jets under contract within the timeframes required or at all, in conformity with customers' configuration specifications or in compliance with minimum guaranteed flight performance, we may be required to

---

[5] Am. Compl., at ¶ 30.

> reduce the purchase price of the subject aircraft, we may be unable to collect such pre-delivery payments or may need to return pre-delivery payments we have received.

(*Id*. at 12.)

Plaintiff has not pled adequate facts to establish that Lilum's funding statements were false when made. Furthermore, in multiple financial statements, both before and during the class period, Lilium made cautionary statements regarding its funding and its ability to access funding. Thus, the challenged statements regarding Lilium's funding are not actionable. *Harris v. Ivax Corp*., 182 F.3d 799, 807 (11th Cir. 1999) ("when an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward").

b. <u>Misstatements and Omissions Regarding the Effect of Delaying Lilium's First Manned Flight and Supply Chain Issues</u>

Defendants' statements regarding the effect of delaying Lilium's first manned flight and supply chain issues, like their statements on funding, are similarly not actionable. In their Form 20-F for the fiscal year 2023, Defendants stated that first flight" was "targeted to occur in late 2024" and entry into service was targeted for 2026. Defendants then, in their July 17, 2024, Form 6-K, changed their target to 2025 and offered that the timeline change was "due to the indirect effects of ongoing industry-wide supply chain constraints." Plaintiff contends these statements are misleading because Defendants failed to inform Plaintiff that first flight was necessary for the company's survival and that the reason for the delay was custom parts ordered by Defendants rather than industry supply chain issues. First, the Court notes Defendants' target for "first flight" is clearly forward-looking as it merely outlined a future objective. *See FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1298 (11th Cir. 2011) (a "forward-looking statement" encompasses, inter alia, statements regarding management's future plans and objectives).

Plaintiff's contention that Defendants failed to disclose that first flight was necessary for Lilium's survival is without merit when considered in the context of all statements made by Lilium, In the July 17, 2024, Form 6-K, Defendants made the following disclosures:

- "To conduct [the] first manned test flight Lilium [had to] apply for and obtain a permit from [the] EASA,"[6] which was required to fly its proto-type and that "there [could] be no assurances as to exactly when [Lilium would] obtain such permit, if at all." (July 17, 2024, Form 6-K, at 1.)
- "EASA [] certification/approvals . . . were essential to the sale of Lilium jets and the operation of Lilium services." (*Id*.)
- "Any delays in the development, certification, manufacture and commercialization of the Lilium Jet and related technology, such as battery technology or electric motors, [could] adversely impact [Lilium's] business, financial condition and results of operations." (*Id*. at 9.)
- "[T]he Lilium Jet cannot be utilized in commercial services until [it] received Type Certification for the Lilium Jet" and that "[Lilium's] failure to obtain or maintain certification for [its] jets . . . would have a material adverse effect on [its] business and operating results." (*Id*. at 5 and 23.)

Based on these disclosures, the necessity for first flight was disclosed.

However, even if the need for first flight was not disclosed, as Plaintiff argues, the need for first flight for Lilium, an electric aircraft start-up company, is so basic it need not be said. "If an omitted fact is so trivial or so basic that any investor could be expected to know it, then the fact will be considered immaterial" as a matter of law. *Castellano v. Young & Rubicam, Inc.*, 257 F.3d

[6] European Union Aviation Safety Agency.

171, 180 (2d Cir. 2001). Stated plainly, an omission is only actionably material if it is non-obvious. Here, the alleged omission—the need for flight for an aircraft development company—is obvious, and thus considered immaterial and not actionable. *See S.E.C. v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012) ("To prove a violation of § 10(b) or Rule 10b–5,10 the [plaintiff] must show (1) a *material* misrepresentation or *materially* misleading omission" (emphasis added)). Considering that Lilium was engaged in the development of an electric aircraft—which requires flight—and the disclosures noted above, Plaintiff's contention that Defendants failed to inform investors that first flight was necessary for the company's survival fails.

Plaintiff's second contention—that Defendants misled investors as to the reason for the delay in first-flight testing—also lacks merit. Plaintiff maintains that Lilium, in its July 17, 2024, Form 6-K, misled investors by stating that the delay in first flight was due to "industry-wide supply chain constraints" when in fact the issues were Lilium's specific development of custom parts. Notwithstanding the effects of industry-wide constraints on Lilium's custom parts, Plaintiff, in the same July 17, 2024, Form 6-K, was made aware that Lilium was using third-party suppliers to develop its parts. Lilium also informed investors that these third-party suppliers, and Lilium, faced challenges, including the lack of raw materials or machinery, the breakdown of tools in production or the malfunctioning of technology as they ramped up production. (*See* July 17, 2024, Form 6-K, at 18.) Lilium furthered noted that it had experienced, in the past, delays in the scheduled delivery of certain parts for flight-testing equipment, component parts of the aircraft, and software because of these supply chain constraints. (*Id.*) In the July 17, 2024, Form 6-K, Lilium disclosed that:

- "[Its first fight] timeline also depends in large part upon the timely delivery from our third-party suppliers of the required parts for flight testing equipment and the component parts and software, in each case meeting the required specifications, necessary for the assembly of final prototypes and type-conforming aircraft. Any delays in the delivery of such parts and software, whether due to supply chain constraints, redesigns or otherwise,

will likely delay [its] ability to achieve Type Certification and commercialization of the Lilium Jet." (*Id*. at 7.)

- "Many of the parts and components Lilium requires are custom-made for [Lilium] jets at [its] production facilities or the production facilities of [Lilium's] outsourcing partners and suppliers; the equipment used to produce these parts and components would be costly to replace and could require substantial lead time to replace and qualify for use. [Lilium] may not be able to successfully develop commercial-scale manufacturing capabilities internally or supply chain relationships with [Lilium's] intended Tier 1 suppliers or other suppliers." (*Id*. at 14.)

- "If [Lilium's] suppliers experience any delays in providing [Lilium] with or developing necessary components, or if [Lilium's] suppliers are unable to deliver necessary components in a timely manner and at prices, quality and volumes acceptable to [Lilium], [Lilium] could experience delays in manufacturing or servicing [its] jets, delivering on [its] timelines and launching and scaling up as anticipated, which could have a material adverse effect on our business, prospects and operating results." (*Id*. at 20.)

Thus, in the July 17, 2024, Form 6-K, Defendants specifically informed investors, including Plaintiff, that many of the components for the jet were proprietary and novel, and as a result had never been produced at scale. (*Id*. at 7.) Defendants also informed Plaintiff that there was no guarantee that suppliers would be able to achieve large-scale, cost-effective commercial production of these components according to Lilium's schedule or at all, and noted that Lilium's financial condition and operations could be materially and adversely impacted as a result. (*Id*.) Against this backdrop, Plaintiff's claim that Defendants failed to inform Plaintiff that first flight was necessary for the company's survival or that Defendants misled Plaintiff as to the reason for the delay in the first-flight target lacks factual support. Thus, claims based on the statements about first flight and first flight delays are dismissed.

c. <u>Misrepresentations and Omissions Regarding Insolvency Without the German Government Loan</u>

Defendants argue that their statements regarding the risk of insolvency without the German Government loans are not actionable. Plaintiff alleges that Lilium's disclosures consistently

represented that Lilium had alternative sources of funding to continue operations, but Defendants knew that without the German loans, there would be no funding from investors and Lilium would run out of money. Defendants argue that Plaintiff's challenge boils down to fraud by hindsight. The Court agrees with Defendants in part. As noted above, Lilium's statements regarding alternative sources of funding were forward-looking and thus not actionable. However, the Court finds that Defendants' failure to inform investors of impending insolvency without the German Government loan requires further consideration.

"Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *In re Galectin Therapeutics, Inc. Sec. Litig*., 843 F.3d 1257, 1274 (11th Cir. 2016). Section 10(b) of the Exchange Act and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information; nevertheless, Rule 10b-5(b) does "prohibit[ ] not only literally false statements, but also any omissions of material fact 'necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *FindWhat Investor Grp*., 658 F.3d at 1305 (quoting 17 C.F.R. § 240.10b–5(b)). The Eleventh Circuit has held that statements about a company's financial condition, including insolvency, must be demonstrably false when made, not merely optimistic or later proven incorrect. *See Garfield V. NDC Health Corp*., 466 F.3d 1255, 1271 (11th Cir. 2006) (dismissing the plaintiff's amended complaint for failing to demonstrate the defendant's false misstatements met the pleading requirements of Rule 9(b) and the PSLRA). Plaintiffs are precluded from pleading fraud by hindsight, which occurs when a plaintiff tries to bring a securities fraud claim by cobbling together speculative allegations "based on nothing more than a company's announcement of bad news." *In re SportsLine.com Sec. Litig*., 366 F. Supp. 2d 1159, 1162 (S.D. Fla. 2004).

Here, Plaintiff alleges Lilium stated it had alternative sources of funding yet failed to disclose the known fact of insolvency absent the German loans. While Lilium's statements regarding its expected sources of funds are not actionable, because Lilium made statements regarding its expected ability to source funds, it thereafter had a duty to disclose any material change in its ability to source funds so as to not mislead its investors. If, however, Lilium's omission regarding its risk of insolvency created a "substantial likelihood" that a "reasonable investor" would have viewed the omission as "significantly alter[ing] the 'total mix' of information made available" Lilium's omission would be actionable. *S.E.C. v. Morgan Keegan & Co*., 678 F.3d 1233, 1245 (11th Cir. 2012). Because a reasonable investor could view Lilium's alleged omission that Lilium was certain to face insolvency absent the German loans as significantly altering the total mix of information made available—the alleged omission is actionable. Thus, the Court finds that the omission of the risk of imminent insolvency without the German loans is an actionable omission.

**B. Scienter**

To state a claim based on Lilium's omission about the risk of insolvency, Plaintiff must plead that Defendants acted with scienter when making the omission. The PSLRA requires securities-fraud claimants to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This means the pleadings here must show "either an intent to deceive, manipulate, or defraud or severe recklessness." *Mizzaro*, 544 F.3d at 1238. "[T]emporal proximity between positive statements stressing a firm's strengths and announcements of poor economic performance do not create an inference that the earlier statements were fraudulent." *In re Republic Servs., Inc. Sec. Litig*., 134 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) (requiring allegations of when a defendant knew its

statements were false and details as to how the defendant knew its statements were false). A complaint must "set forth in detail and with particularity the statements the plaintiff allege[s] to be false, when the statements were made, who made the statements, [and] why the statements are false." *In re Republic Servs., Inc. Sec. Litig.*, 134 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001). "[U]nsubstantiated beliefs and conclus[]o[]ry statements" of what was "common knowledge" do not support the strong inference of knowledge required by the law. *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1334 (S.D. Fla. 2004). The Court finds that Plaintiff has failed to allege sufficient facts to support its claim as to Defendants' alleged omission of the risk of insolvency without the German loan because Plaintiff has not alleged sufficient facts to establish scienter.

Here, from the beginning of 2024 and through the class window, Defendants disclosed that "[Lilium had] incurred significant losses and expect[ed] to incur significant expenses and continuing losses for the foreseeable future, and [that it] may not achieve or maintain profitability, and there [was] substantial doubt about [Lilium's] ability to continue as a going concern." (2023 Form 20-F, at 11.) While Lilium did represent in their July 17, 2024, Form 6-K, that it "expect[ed] to fund its ongoing operations until type certification and entry into service with existing cash on hand, non-dilutive methods of financing such as debt instruments, government support (including, [the] previously announced potential [funds] from the German and French governments)," Lilium, in their July 17, 2024, Form 6-K, also disclosed that its ability to obtain funding from some of these alternative sources was subject to milestones it could not guarantee it would ever meet. Lilium informed investors that "[it] might not be able to obtain any funding, and [that it] might not have sufficient resources to conduct [its] business . . . which could mean that [it] would be forced to curtail or discontinue [its] operations." (July 17, 2024, Form 6-K, at 2.) Lilium also disclosed that "[a]ny investment in Lilium [was] highly speculative and could result in the loss of [an

investor's] entire investment." (*Id*. at 8.) From these disclosures, it is apparent that Lilium's financial future, even at the beginning of 2024, and going forward, was not secure.

Notwithstanding Lilium's financial position, which was arguably disclosed, absent from Plaintiff's Amended Complaint is why bankruptcy was imminent only if Lilium failed to obtain the support of the German and French governments, and when Lilium knew this. Lilium disclosed multiple sources of possible incomes, including: "cash on hand, non-dilutive methods of financing such as debt," "additional equity securities," and "additional investments by existing shareholders." Plaintiff's Amended Complaint fails to allege why the German and French loans were dispositive to Lilium's financial health. There are no allegations that detail when Lilium knew there would be no funding from existing investors or collateral sources or how Lilium knew.

The thrust of Plaintiff's PSLRA claim is that Defendants' disclosures consistently represented that Lilium had alternative sources of funding to continue operations, when Defendants knew that Lilium faced insolvency without the German governments' loans. Here, Defendants' knowledge of Lilium's financial woes is allegedly derived entirely from Defendants' "management" and management's involvement in "day-to-day operations" and the allegation that "Lilium employees were 'super skeptical' that the German [] governments would aid the company." (Am. Compl., at ¶¶43, 59.) But these unsubstantiated beliefs as to what was common knowledge at Lilium are insufficient to provide the requisite strong inference of knowledge. There are no specific allegations as to when Defendants were given any information that detailed that Lilium was imminently insolvent absent the German loans. Nor does Plaintiff allege how Lilium's disclosures were known to be false at the time they were made with respect to its ability to continue obtaining funding from other sources. Because Plaintiff has not pleaded facts supporting a "strong inference" of conscious misbehavior or recklessness, his securities fraud claim with respect to

statements regarding Lilium's risk of insolvency without the German Government loan are dismissed.

Accordingly, it is

**ORDERED** that

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint [DE 69] is **GRANTED**.
2. By April 3, 2026, Plaintiff may file an amended complaint based solely on claims regarding Defendants' alleged omissions about Lilium's risk of insolvency without the German Government loan.
3. To the extent Plaintiff's claims are based on other alleged misstatements or omissions, the claims are dismissed.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 27th day of March, 2026.

**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record